CIRCUIT COURT FOR MULTNOMAH COUNTY, NOVEMBER TERM, 1869.

## THE OREGON CASCADE R. R. CO. *v.* JOSEPH BAILY, DEFENDANT, AND THE OREGON STEAM NAVIGATION CO., INTERVENOR.

PLEAS IN ABATEMENT AND IN BAR.—JOINDER.—In an action to appropriate land to the use of a railroad corporation, the defendant will not be allowed to unite the several defenses in one trial, that the company is not incorporated, the land is not subject to appropriation, and its value is $200,000.

IDEM.—CONSENT.—The parties may consent to try the two latter issues together.

VIEW.—Duties of jurors in viewing premises, stated.

ACTION TO CONDEMN LAND FOR A RAILROAD.—Where the plaintiff sues to condemn sixty feet in width, he will not be allowed to give evidence of the value of, and ask a verdict for the condemnation of forty-five feet in width.

PAROL.—Parol evidence of a written statement of value furnished the assessor is not admissible.

ADMISSIONS.—Nor is the assessment roll admissible to prove the value of the land, or to prove at what sum the owner valued it.

EVIDENCE.—The plaintiff was not permitted to go into a general exhibit of the defendant's corporate transactions and rates of charge, to show that the defendant was claiming the land solely for the purpose of monopoly or to prevent competition.

ARTICLES OF INCORPORATION.—The evidence of the powers of a corporation is now to be found in the general law and its articles of incorporation, as formerly this was contained in the charter.

THE CONDEMNATION IS TO A PUBLIC USE.—When private property is condemned to the use of a corporation, it is condemned to a public use. It is because the corporation is to be a public agent that the legislature has power to authorize the condemnation. If the government authorizes the taking of private property for any use but a public one, the act is void.

PURCHASE.—A corporation has no higher or better right to property condemned by the judgment of a court, than to that acquired by purchase without condemnation.

LIABILITY OF CORPORATION'S PROPERTY TO CONDEMNATION.—In general, property held by a corporation and necessary to the public use for which the corporation is created, is not liable to be condemned and appropriated to another corporation for the same use.

ARTICLES OF INCORPORATION, CONSTRUCTION OF.—A company incorporated to transport freight and passengers on a river and its portages, is not necessarily limited to one side of the river at a portage.

RIGHT OF WAY.—A corporation has no right to the exclusive use of a right of way that is not necessary and useful in its corporate business.

IDEM.—If the defendant has voluntarily abandoned the use of the land in question as a part of its line of transportation, the land is liable to be condemned.

IDEM.—The question of forfeiture cannot be tried in a proceeding to condemn land.

THIS is an action to condemn and appropriate lands to the use of a railroad company.

The complaint states that the plaintiff is duly incorporated "for the purpose of locating, building, constructing, stocking and using a railroad" from a certain designated point (at the foot of "The Cascades"), to another point (at the head of "The Cascades"); and "for that purpose the plaintiff needs the right of way over certain lands, part of which lie in Multnomah County, Oregon, and a part thereof in Wasco County, Oregon." That the defendant (Joseph Baily) is in the possession of the whole of the said lands; "which lands it herein asks to have appropriated to its use." The description of the lands needed by the plaintiff being as follows, to wit: "Sixty feet in width along the whole length of the following described line; that is to say, twelve feet of said sixty, lying immediately on the northerly side of said line, and forty-eight feet lying immediately on the southerly side of said line." The line is described by courses and distances. The quantity of land within the sixty feet is stated at $32\frac{62}{100}$ acres.

The plaintiff states that it is "unable to agree with the owners of said land as to the compensation to be paid therefor."

The defendant, Joseph Baily, answers traversing the allegations of the complaint, by stating want of knowledge or information, and pleads that the lands are the property of The Oregon Steam Navigation Company. That he has no possession or control of the lands, except that "he is a servant of said O. S. N. Co., and is on said lands solely for the purpose of carrying on the business" of his said employees.

The Oregon Steam Navigation Company, having filed its request in writing, and obtained leave to intervene, and to defend the action in the place of the said Joseph Baily, answered: that it "has not sufficient knowledge or information upon which to form a belief whether or not the plaintiff is incorporated."

That it (The Oregon Steam Navigation Company) is a corporation duly organized. * * * That it was formed for, among other things, navigating the Columbia, Snake and Willamet rivers; setting out as part of the answer, its articles of incorporation, showing that among its objects are the following: "Together with the construction and use of all necessary rail, or plank, or clay roads and bridges at any of the portages of the said Columbia, Snake or Willamet rivers, or to purchase, own and use any such roads." That the said Oregon Steam Navigation Company is owner of the land described in the complaint, and now owns and is using in its said business a line of railroad on the precise line described in the complaint as the plaintiff's proposed line.

That the same is necessary and convenient for and in the said Oregon Steam Navigation Company's said business, and is not subject to appropriation by the plaintiff.

That the value of the land described in the complaint is $200,000; and the damages to defendant which would result from the appropriation of them by the plaintiff will be $200,000.

The replication, by alleging want of knowledge and information, traverses the allegations of the answer.

*W. W. Chapman* and *Mitchell, Dolph & Smith*, for the plaintiff.

*Logan & Shattuck* and *Wm. Strong*, for the defendants.

The replication having been filed at a preceding term, and the case now coming on for trial, the plaintiff moved that the defendant be required to elect upon which of the several classes of defenses pleaded in the answer, it would rely.

The defendant objected that it was too late after replication to make the motion.

It was held that the several issues could not be tried at the same time.

The plaintiff announced that he waived the first defense, namely, that the plaintiff was not an organized corporation.

The plaintiff renewed his motion, insisting that under section 45, page 671, of general laws, the defendant could not set up a defense that the land was not liable to appropriation, and at the same time claim damages and try the question of value. The court expressed the opinion that the two defenses required separate trials, if the plaintiff insisted on the objection.

Thereupon the parties stipulated that both questions be tried at the same time, and by the same jury, and that if the first of these issues should be found against the defendant, the defendant should pay the costs of the present term. The defendant filed a written motion that the jury view the lands in question.

A jury of twelve was selected and sworn, and the respective parties stated the case to the jury. The respective parties consented that the jury separate for such time as should by the court be deemed proper, and waived the necessity of the jury being kept together, and of an officer attending or taking charge of the jury upon occasion of a view of the premises, and consented that the jury now separate to go by steamer to the premises in controversy. By consent, a person was appointed to show the jury the premises.

UPTON, J. then admonished the jury as follows: "You are not to converse with each other nor with any other person, nor express any opinion on any subject connected with this trial, until the case is finally submitted to you. This direction must also be observed while you are absent from the court for the purpose of viewing the premises in question. The object of this view is to make you acquainted with the land that is sought to be condemned or appropriated, and with the country surrounding it, that you may be the better enabled to judge of the situation of the parties and their property, and the rights that may be affected by the result of the action. The person appointed for that purpose will point out to you the premises in question, the particular lands claimed by the plaintiff, and the lines and the monuments of the survey of the premises; and it will be your privilege and duty to observe these, and the geography of the surrounding country. You should not permit any other person to converse within your hearing on any subject connected with the trial.

On the trial of the cause the first important question will be whether the plaintiff is entitled to have this land appropriated. This may depend upon the law or upon the facts of the case, or it may be a question depending both upon the law and the facts.

It is the right of the parties to be fully heard on the question in controversy, before any conclusive opinions are formed by you. You will, therefore, as far as possible, avoid coming to any settled conclusions in your own minds, on any of these questions, until the case is finally submitted to you. It may become your duty, in the course of the trial, to estimate the damages that would be occasioned by appropriating the premises for the plaintiff's road. One object of the view is, that by seeing the premises and learning the situation of the surrounding country, you may be better prepared to understand and weigh the evidence the parties may offer on that subject. You are permitted to separate and will meet upon the steamer on Wednesday morning, and be present in court on Thursday morning next, at 9 o'clock."

On the trial it was shown by inspection of articles of incorporation of the plaintiff and of the defendant, that each was incorporated for the purposes stated by each respectively in the pleadings. That the proposed railroad line was identical in locality with a line of railroad constructed or purchased by the defendant, the O. S. N. Co., about 1862.

The evidence was conflicting as to whether that railroad ought to be considered as in use at the present time by the O. S. N. Co. as a part of their general line, or means of transportation between Portland and The Dalles. The Cascades is a *portage* on the Columbia River about midway between Portland and The Dalles, of about three miles, over which freight or passengers cannot be conveyed by boats. The evidence shows that at one time the railroad on the Oregon side, which is identical in locality with the plaintiff's proposed line, was used by the O. S. N. Co. as their sole means of connection between their steamers, above and below the *portage* at The Cascades. That about 1862, the same persons who were the stockholders of the O. S. N. Co., became the stockholders of a company, incorporated under the laws of Washington Territory, known as the "Cascades Railroad Company;" which last named company became and are owners of a good and well equipped railroad, extending from the upper to the lower extremity of the portage at the Cascade. About that time, the last named company leased the last named railroad to the O. S. N. Co., at a certain price per ton for freight and a certain rate *per capita* for passengers. The lease has been renewed from year to year, and the O. S. N. Co. still holds possession of the last named railroad as tenant of the said Cascades Railroad Company, and nearly all its freight and passenger business at that point is done by means of that, road, on the Washington Territory side of the Columbia, that road being a good T rail structure, operated by good locomotives. The road on the Oregon side is constructed with "strap rails," is in a bad state of repair, and operated only by horse power. There was conflicting evidence whether during the five or six years the latter road

had been used at all as a connecting link between the steamers above and below the portage. Some of the witnesses testified, that during that portion of the year when emigration was largest, it was used for transporting the wagons and furniture of through passengers or emigrants who chose to transport their own live stock over or around the portage. And also, that live stock was taken by that route at a lower price than on the Washington Territory side, and was detained one day longer on the trip when taken that way.

It was testified, that the Cascades Railroad Company was indebted to the O. S. N. Co. for money advanced in the construction of its road, and thus owed more than it could pay.

The intervenor introduced a patent and deeds to show title to the lands in question. Some of the intervenor's witnesses estimate the value of the land sought to be appropriated at $200,000. Some of the plaintiff's witnesses estimate it at not more than two or three dollars per acre.

Mr. Burrage, an engineer, testified, that the line described by courses and distances in the complaint, followed the south rail of the O. S. N. Co.'s railroad.

The plaintiff asked his witness the following question:

"What is the value of a strip of land forty-five feet wide lying three feet southerly from where the south track of the old railroad was laid?"

The plaintiff objected to the question as irrelevant, and the objection was sustained.[1]

The plaintiff asked of the defendant's witness, who was vice-president of the defendant, on cross-examination:

"Did you not, in 1869, furnish to the county assessor a written statement of the value of that property?"

The witness answered: "I did."

The plaintiff then asked: "What was the value stated by you to the assessor?"

The defendant objected that the writing was the best evi-

---

1. The plaintiff claimed that by analogy to proceedings in possessory actions and by the provisions of section 317 of the code, the plaintiff may have condemnation *of a part* of the lands, if not the whole.

dence, and that the admissions of a stockholder were not the admissions of the corporation.

The objection was sustained.

The plaintiff offered in evidence the county assessment roll of 1869. The defendant objected to it as incompetent, and the objection was sustained.[1]

The plaintiff then proposed to prove that the object of the O. S. N. Company, in keeping possession of the ground in controversy, was not transporting over it, but was to prevent others from using it, to enable the O. S. N. Co. to monopolize the trade of the Columbia River, and asked the following: "What is the rate per ton for freight from the Lower Cascades to The Dalles?"

The question was objected to as irrelevant, and the objection was sustained.

The plaintiff asked the following instructions, which the court declined to give :

1. "The defendant, by mere act of incorporation, acquired no franchise from eminent domain, and therefore if the jury believe that the defendant has not condemned the land in controversy, under the laws of the State of Oregon, then the defendant is a mere private owner, and the lands are subject to condemnation by the plaintiff, or to the plaintiff's use."

2. "If the defendant once acquired a right to use the railroad on the Oregon side, and a right to use it as part of their line of transportation, and has since forfeited it, the land is subject to be condemned to the use of the plaintiff."

The following, asked by the plaintiff, were given :

3. "If the defendant once acquired a right to use the railroad on the Oregon side, and has since abandoned all intention of using it as a part of their line of transportation, the land is subject to be condemned to the use of the plaintiff."

4. "If the sixty feet claimed by the plaintiff has once been condemned to the use of defendant, under the laws of

1. By the statute, the assessment is made on the estimate of the assessor, and not on that of the owner of the property.

this State, the same may be again condemned to the use of the plaintiff, if it can be so condemned and used by the plaintiff without interfering with its use for the purposes of the defendant."

The following instructions, asked by the intervenor, were given:

5. "To constitute an abandonment by the corporation, it must appear that the company has voluntarily abandoned and given up all intention to use the road as a part of their line of transportation."

6. "If the O. S. N. Co. purchased the land upon which this road is laid and appropriated it for a railroad across that portage, then it was not necessary that it should be condemned under the statute, to give the company all the rights they can in any way acquire under their article of incorporation or under the law."

7. "The Oregon Steam Navigation Company have a right to transport their freight and passengers on either or both sides of the river, without forfeiting their right to a line for a road on the Oregon side, provided they did not abandon their intention to use the Oregon side."

UPTON, J., gave the following charge:

In this action the plaintiff seeks to condemn lands for the purpose of constructing a railroad. A defense set up is, that the defendant, as a corporation, is entitled to use, and is using, the same land for the purpose of operating the defendant's railroad. The value of the premises is also put in issue.

The first point to which I will refer is the defendant's rights as a corporation, if it has ever been empowered to operate a railroad on the premises in question.

Formerly, corporations were formed by a direct grant from the sovereign power. The instrument in which the grant was expressed was called a charter, and it was the practice in most of the states of the Union, until recently, for the legislature to grant charters. Each corporation was created by a special act of the legislature.

This practice conferred special favors, and was thought

to have a bad influence upon legislation. When our constitution was formed, it was provided that no corporation should be created by special act of the legislature. The words of the constitution are, "Corporations may be formed under general laws, but shall not be created by special laws, except for municipal purposes. All laws passed pursuant to this section may be altered, amended or repealed, but not so as to impair or destroy any vested or corporate rights.

The word corporation is here used to denote such ideal bodies as had formerly been created under that name by charter or by special legislative acts; and that meaning must be given to the word corporation in construing the general law that provides the mode of forming corporations.

Formerly, legislatures having power to grant charters, could place such restrictions upon the corporation at the time of its creation as legislative wisdom should suggest; but whatever right or power was then unconditionally conferred, became inherent or vested in the corporation. Concessions to corporations are in the nature of grants. So our legislature acting under this provision of the constitution, has the power to provide by general law to confer such rights and powers on corporations.

The object and effect of the constitutional provision is, not to change the nature or character of the corporate body, but to place all men on an equality in obtaining these privileges, and to disconnect the business of granting charters from the business of legislation.

The legislature, in passing such general law, can undoubtedly place upon corporations such restrictions as the public good may require, and may provide by general law for conferring powers similar to those formerly conferred by acts of special grant. The evidence of the powers of a corporation is now to be found in the general law, and in the articles of incorporation filed by the company, as formerly this was contained in the charter.

In a case reported in 2 Gray, 1, Chief Justice Shaw says: "The act, like every act and charter of the same kind, is a contract between the government on the one part, and the

undertakers (corporators) accepting the act of incorporation on the other."

\* \* \* "It conferred on the persons incorporated the franchise of being and acting as a corporation." \* \* \* \* "It confers the right to collect such tolls as the corporation shall fix." \* \* \* "This is in every respect a *public* franchise, which no one could enjoy but by the authority of the government;" and still speaking of the character of the grant, it is added: "It was made by the government in its sovereign · capacity with subjects who were encouraged by it to advance their property for the public benefit." \* \* "It was, therefore, a covenant for quiet enjoyment against its own acts and those of persons claiming under it."

The general corporation act of this state confers on the corporators the right to pursue the business for which they lawfully incorporate, and during the period fixed for their· corporate existence. It allows private property to be appropriated for the use of the corporation, whether acquired by purchase or condemned by the judgment of a Court. And both as to the extent of its use, and the time it may be used, it confers rights that are fixed, certain and positive.

Corporations are *quasi* public bodies. When private property is condemned to the use of a corporation, it is condemned to a *public* use. It will not be contended that private property could be taken for the use of a corporation upon a different theory.

When the sovereign power authorizes a railroad company to appropriate private property, it is upon the assumption that the railroad company is a public agent, and it appropriates the property for a public benefit and to a public use. And it is to that end and upon that ground alone that the legislature has any power to authorize a condemnation of private property to the use of another, without the owner's consent.

When a railway company acquires the right of way and constructs a road, under proper articles of incorporation, it acquires a right to hold such right of way and operate such road for the specified period; although the company is

serving its own special interest and actuated solely by motives of self-interest, this privilege and franchise is a right to act as a public agent, and to manage the road for a public use. The same jurist says: "If the government authorizes the taking of property for any use but a public one, or fails to make a compensation, the act is void." It is wholly immaterial upon this point whether such railway company obtains the property, which forms the road bed, by purchase or by the judgment of a court. The general corporation law and the act of incorporation under it, create the corporation and confer whatever franchises are granted or conferred. It is not the condemnation of property that gives character to the corporation. The judgment of the court is a means of placing the corporation in possession of what is necessary to a discharge of its franchise and its duties to the public. But when property is condemned, the corporation has no higher or better right to that property, than it has to property acquired by purchase.

It follows from what has already been said that, whether the right of way is acquired by gift, or by purchase, or by the judgment of a court, the corporation is so far a public agent, that what it holds in its corporate capacity is held for a public use.

In general, property necessary to such use and so held, is not liable to be condemned and appropriated to another corporation for the same use to which it has already been set apart.

A greater public necessity may arise, that will authorize a new appropriation or the subjection of the property to a new use. This may occur, for instance, when it is necessary for one railway to cross the track of another.

If a railway company could condemn and appropriate the ground and track of another similar corporation, so as to deprive the first of its use, a third company could immediately proceed in the same manner against the second. The proposition needs but to be stated to show its impropriety.

I have stated the law upon this point and the reason upon which it rests, thus fully, that the jury should be entirely

free from any doubt on this question while considering other important and controverted questions that arise in the case. It is claimed by the plaintiff that the defendant's business on the Columbia River is confined to a single line. That if the defendant operates a railroad on each side of the river, the defendant operates two lines and exceeds its powers, and that by using a road in Washington Territory, the defendant forfeits all rights to use a road on this side.

By the law and the articles of incorporation, the defendant is not limited to one side of the river, but has the right to transport goods and passengers around the rapids by such road or roads in its control as is necessary and profitable, without being limited to either side of the river.

It is also claimed by the defendant, that the road on the Oregon side is not necessary in the business of the company, and therefore the Oregon Steam Navigation Company, as a corporation, cannot hold it. A corporation has no right by virtue of its corporate power to the exclusive use of property that is not necessary and useful in the course of its business as a corporation. It is for you to determine as a question of fact, whether the road on the Oregon side is necessary to enable the defendant to carry on their business, named in the articles of incorporation, in a judicious and profitable manner. The plaintiff also claims that if the defendant did once acquire the right to operate a road on the Oregon side of the river, the defendant has abandoned the road and forfeited the right to use it.

What is properly called forfeiture may be distinguished from an abandonment. A corporation may forfeit its franchises and render itself liable to have them declared forfeited, but that question cannot be tried here. The question whether the defendant has abandoned this road, can be tried here.

To constitute an abandonment, it must appear that the defendant has voluntarily given up the intention of using this road as a means of transportation on this portage. It is a question of fact for you to determine whether the defendant has voluntarily abandoned the intention of using this road as a link in their line of transportation.

As to the right of the defendant to operate a railroad on the track lying in Oregon, it is proper to consider the subject, first, with a view to determine whether the company ever acquired the right to use it. For this purpose we should examine their articles of incorporation and determine from the articles what was the business for which the incorporation was formed. When this is ascertained, it is to be determined whether this road was such an one as the company was authorized to operate, and if it is such, whether the defendant did acquire it and operate it. If the defendant acquired it and operated it, and you find that it is not now necessary and convenient for a profitable transaction of the defendant's business—or that the defendant has voluntarily abandoned its intention to use it in that business, it is subject to be condemned.

If the defendant acquired a right to operate a railroad on the Oregon side of the river, the fact that there is another road which they can and do use, does not preclude a right to operate the one on this side, provided this one is still necessary and convenient in their business. Nor is there anything in the law to prevent the defendant's using a road on each side, if the legitimate business of the corporation is such that the two roads are necessary and convenient in that business. It is a proper question for you to consider whether the use of this land is necessary to a profitable transaction of the defendant's business; because the defendant has no right to an exclusive possession of lands that are not necessary and convenient in its business.

But it is not the province of this court to deprive the defendant of property that is necessary in that business, on the ground that the defendant is a monopoly. The law has provided a different remedy for that evil. The defendant cannot object to the appropriation on the ground that opening the route will build up a rival company; and the plaintiff cannot claim anything on the ground that competition would be a public benefit.

The plaintiff must show a right to take the whole sixty feet described in the complaint, or it cannot take anything in this proceeding. It is for you to determine, as a question

13

of fact, whether the road is one of the means of defendant's transportation and necessary to the defendant for the business for which it is incorporated. The defendant cannot hold lands that it does not need, merely in order to prevent competition by a rival company. Nor can the plaintiff take from the defendant what the defendant does need in its business on any claim that the defendant creates a monopoly.

If you find that the land is not subject to appropriation, you will say so by your verdict, but if you find that it should be appropriated, you will estimate its value at what you think it is worth.

You are to judge of the credibility of the witnesses, and the weight of their testimony, their means of knowledge, and on questions of value, of the soundness of their opinions.

The defendants had a verdict, that the lands in question were not subject to condemnation.

The plaintiff moved for a new trial.