VENABLE, *Appellant*, v. THE WABASH WESTERN RAILWAY COMPANY.

In Banc, November 14, 1893.

1. **Dower:** PUBLIC USE: RAILROAD. A conveyance to a railway company of a right of way through the grantor's land is a dedication to the public use, and the grantor's widow cannot recover dower in the land so conveyed although she did not join in the deed.

2. **Evidence:** OPINION OF LEGAL PROFESSION. The common opinion of the legal profession on a question of first impression for many years is evidence of the law on such question.

*Appeal from Chariton Circuit Court.*—HON. G. D. BURGESS, Judge.

AFFIRMED.

THE plaintiff by her petition herein claims dower in a strip of ground one hundred feet wide and two

hundred and seventy-five rods long, which the defendant company occupies as a right of way, and as incident to such claim she asks damages because of being deforced of her dower; this is, in substance, the first count of her petition.

The second count of the petition seeks to recover damages by reason of the railroad of the defendant dividing the farm into two irregular parcels, thereby impairing its value, and by reason of embankments thrown up in the building of the railroad, whereby about fifty acres of said land were rendered wholly untillable and worthless.

The cause was tried on the following agreed statement of facts:

"The plaintiff is the widow of Jacob M. Venable, to whom she was lawfully married in 1846, and with whom she lived as his wife until his death in 1882.

"During the coverture of plaintiff, on the nineteenth day of October, 1865, her husband, then lawfully seized in fee of the lands described in the petition, executed, acknowledged and delivered to the North Missouri Railroad Company a deed, now duly recorded, conveying to said company 'the right of way for the construction, operation and use of the west branch of the North Missouri railroad over and through any land owned by him in the county of Chariton, in said state, the same being situated in sections 10, 11, 14 and 15, township 53, range 19, the said right of way to have the extent of one hundred feet in width through said land, or as much more as may be necessary for the actual construction and operation of said railroad, according to the nature of the ground,' upon the following condition: 'To have and to hold the same unto the said North Missouri Railroad Company, their successors and assigns, as long as the same shall be required and used for the purposes of a railroad, and no longer, the said right of

way to be confined to that part of said land south of the farm on the same.'

"The plaintiff never joined her husband in the execution of said conveyance, and has not since released or relinquished her right of dower in said land.

"The North Missouri Railroad Company was at that time, and prior to the execution of said deed, a railroad corporation duly organized and chartered under the laws of the state of .Missouri, and as such then had lawful authority to construct a railroad from St. Louis to Kansas City, through Chariton county. The North Missouri Railroad Company had a right to acquire a right of way for its railroad either by voluntary conveyance or by condemnation. The conveyance above described was the only one executed by plaintiff's husband, and no condemnation proceedings were ever instituted for acquiring a right of way over the said lands. Immediately after the execution and delivery of said deed, the North Missouri railroad took possession of the strip of land described in the petition and constructed and operated thereon a line of railway. The defendant has succeeded to all the right, title, interest and estate of the said North Missouri Railroad Company in said lands, as fully and completely as the same was originally conveyed by plaintiff's husband to said North Missouri Railroad Company. The defendant is a railroad corporation, organized under the laws of Missouri on the thirtieth day of September, 1887, and has since that date been in the exclusive possession of a strip of land described in the petition, and has maintained thereon the roadbed and embankments constructed by said North Missouri Railroad Company, and operated its trains thereon. The consideration of $1 recited in the deed was never paid, nor were any damages ever paid to plaintiff's husband for the injury,

if any, done the remainder of said lands by the construction and maintenance of its said line of railway.

"Plaintiff's husband was seized in fee, and was in possession of all of said lands described in the petition at the time of his death, except the strip now held and used by defendant, as aforesaid. Said lands constitute one farm or plantation, whereon his dwelling-house was situated, and where he resided with his family at the time of his death. Plaintiff, his widow, by herself and her tenants, has ever since remained in possession of said dwelling-house and farm. No dower has ever been assigned said widow in any of the lands described in the petition.

"The embankment complained of in the second count of plaintiff's petition was constructed by the North Missouri Railroad Company in the early part of 1868, more than twenty years before the institution of this suit. Said embankment was, when so first constructed, and has ever since remained, a permanent structure, and no change has ever been made in said embankment since its first construction aforesaid."

This action was instituted by the widow in 1888.

*A. W. Mullins* and *T. T. Elliott* with *Crawley & Son* for appellant.

(1) By ignoring and failing to plead to the first count of the petition, defendant admitted the truth of its allegations. Revised Statutes, 1889, secs. 2073, 2107; Bliss on Code Pleading, sec. 345. (2) The plaintiff was entitled to recover her dower on the admitted facts. No act, deed or conveyance of the husband, and no laches or default on his part, shall deprive the wife of her dower. Revised Statutes, 1879, sec. 2197; 2 Scribner on Dower, pp. 581, 583, and note 603, *et seq.*; Tiedeman on Real Property, secs. 131, 132; 1 Sharswood & Budd's Leading Cases on Real Prop-

erty, 332; *Nye v. Railroad*, 113 Mass. 277; *Grady v. McCorkle*, 57 Mo. 172; *Williams v. Courtney*, 77 Mo. 587; *Davis v. Green*, 102 Mo. 170; *Hall v. Smith*, 103 Mo. 289.   (3) The respondent stands in the shoes of its predecessor, the North Missouri Railroad Company, as to the property in question.   *Bradley v. Railroad*, 91 Mo. 493.   (4) Appellant is entitled to possession of the entire plantation in right of her quarantine; and being so in possession may, of course, maintain her action against defendant for injury thereto affecting her rights.   Revised Statutes, 1879, sec. 2205; *Orrick v. Pratt*, 34 Mo. 226; *Miller v. Talley*, 48 Mo. 503; *Brown v. Moore*, 74 Mo. 633; *Roberts v. Nelson*, 86 Mo. 21; *Allen v. Railroad*, 84 Mo. 646.   (5) And defendant is liable not only for the value of plaintiff's interest in the strip of land wrongfully entered upon and appropriated, but also for the injury done plaintiff's possessory rights in the adjacent lands, by reason of the wrongful maintenance of defendant's embankments, notwithstanding such embankments were originally constructed by the North Missouri Railroad Company.   *Dickson v. Railroad*, 71 Mo. 575; *Wayland v. Railroad*, 75 Mo. 548; *Culver v. Railroad*, 38 Mo. App. 130; *George v. Railroad*, 40 Mo. App. 433.   (6) Where the entry is made under the deed of the husband, the possession relied upon to defeat the widow's rights must have become openly hostile and adverse since the husband's decease, and must have continued for ten years before the commencement of her action.   Sedgwick & Wait on Trial of Titles to Land [2 Ed.] secs. 749–752, p. 599, *et seq.; Farris v. Coleman*, 103 Mo. 352; *Handlan v. McManus*, 100 Mo. 124; *Smith v. Patterson*, 95 Mo. 525; *Beard v. Hale*, 95 Mo. 16; *Robinson v. Ware*, 94 Mo. 678; *Moore v. Harris*, 91 Mo. 616; *Dyer v. Witten*, 89 Mo. 91; *Mueller v. Kaessman*, 84 Mo. 318.

*F. W. Lehmann* and *George S. Grover* for respondent.

(1) Plaintiff's right of dower in her husband's estate is subject to the right of way granted by her husband to the North Missouri Railroad Company. 1 Scribner on Dower, p. 577; 1 Washburn on Real Property, 220; Dillon on Municipal Corporations, sec. 459; Mills on Eminent Domain, sec. 70; *Moore v. Mayer*, 8 N. Y. 110; *Gwynne v. City*, 3 Ohio, 24; *Railroad v. Swinney*, 38 Iowa, 182; *Duncan v. City*, 85 Ind. 104; *Walker v. Deaver*, 79 Mo. 664; *Zimmerman v. Snowden*, 88 Mo. 218; *Hargis v. Railroad*, 100 Mo. 210; *Cory v. Railroad*, 100 Mo. 282; Sedgwick on Constitutional & Statutory Law, 216; *Scanlan v. Childs*, 33 Wis. 663; *Packard v. Richardson*, 17 Mass. 143. Coke upon Littleton, 31*b;* Park on Dower, 121; 1 Scribner on Dower, 577; Walker on American Law [6 Ed.] 366; American Law Register, 12 N. S. 496; Southern Law Review, 5 N. S. 1; *Railroad v. Bailey*, 3 Ore. 178; *New Central Co. v. George's, etc., Co.*, 37 Md. 562; *Swan v. Williams*, 2 Mich. 427; Charter of the North Mo. Railroad, sec. 8; *Wabash Case*, 118 U. S. 586; *Olcott v. Supervisors*, 16 Wall. 594. (2) As the statement of facts conclusively shows that the plaintiff has a homestead interest in the estate described in the petition, and as this record fails to show any proceeding to set off the homestead before instituting this suit, she is not entitled to recover in this action, because, until the homestead is set off, she is not entitled to dower in the land, and before it is set off it cannot be determined whether she has any dower or not. Revised Statutes, 1889, sec. 5440. (3) The plaintiff's cause of action on account of the injury to her land caused by the embankment erected by the defendant's predecessor is barred by the statute of

limitations.   *James v. Railroad,* 83 Mo. 567; *Bird v. Railroad,* 30 Mo. App. 305.

SHERWOOD, C. J.—I.   The first and the controlling question the record presents is whether the plaintiff is entitled to demand dower in the defendant company's right of way.

Touching the validity of such a demand in the circumstances similar to those here related, an author of recognized authority says:   *"First.*   In the time of Henry III. the great charter of King John was so amended as to withhold from the widow the privilege of *quarantine* in the *castle* of her husband.   'This,' says Lord COKE, 'is intended of a castle that is warlike, and maintained for the necessary defense of the realm, and not for a castle in name maintained for habitation of the owner.'   Although the language of the great charter appears to be limited in this particular, to the *quarantine* of the widow, it is nevertheless laid down by the same author, above quoted, that a castle necessary to the public defense is not subject to dower.   'Of a castle that is maintained for the necessary defense of the realm, a woman shall not be endowed, because it ought not to be divided, *and the public shall be preferred before the private.*   But, of a castle that is only maintained for the private use and habitation of the owner, a woman shall be endowed.'   Here we see shadowed forth the principle upon which the courts, at a later day, have proceeded, in holding the inchoate right of dower extinguished in lands appropriated, according to the forms of law, to the uses of the public.

*"Second.*   The English reports furnish no instance in which the applicability of this principle to the case of lands taken for public uses is considered; but it appears to have been assumed in the time of Mr. PARKE, that by such appropriation the right of dower was

divested. 'It should also be noticed,' he says, 'as the prevailing impression of the profession, that under enabling acts, such as those of the West India and London Dock Companies, the Grand Junction canal, and the improvements at Temple Bar, Snow Hill and Smithfield, the wife's title of dower will be bound by the alienation of the husband, although the title is taken by way of conveyance only, and the purchase money is not invested in other lands, or paid into the bank. This is understood to have been the opinion of several gentlemen of high professional reputation, in answer to the requisition of an eminent conveyancer, who, on behalf of the corporation of London, had called for fines from vendors whose wives had titles of dower, and the writer believes that the subsequent practice in the great majority of cases has been to dispense with fines.' In the United States, however, this question, in different forms, has undergone judicial inquiry on several occasions." 1 Scribner on Dower [2 Ed.] 577, 578. And after mentioning several adjudications in this country, sustaining the position that the widow is not dowable in such circumstances, he concludes his observations by saying: "The rule fairly deducible from these authorities would seem to exclude dower in all cases where lands are dedicated to the public for a legitimate purpose, and the public have acquired a right to the enjoyment thereof, or where they are lawfully appropriated in virtue of the right of eminent domain. The reasoning of the courts appears to apply as well where lands are granted and used for public parks, public libraries, or other public use of a like character, as where they are devoted to the purposes of a market-place or a public highway. And it is difficult to discern any good ground for a distinction between the two classes of cases. In some of the

states burial grounds are expressly exempted from dower by statute." 1 Scribner on Dower [2 Ed.] 582.

When discussing the same question the learned author of the work on real property gives expression to conforming views, thus: "One mode in which dower may be defeated remains to be mentioned, and that is by the exercise of eminent domain during the life of the husband, or, what is equivalent to it, the dedication of land to the public use. This grows out of the nature of a wife's interest in the lands, and whether it is such as ought to be regarded in giving compensation." * * * Then, after discussing the authorities, he remarks: "The principle involved in the above and similar cases is a pretty important one, nor has it been hitherto very well defined. It is difficult to see why it should not apply in all cases where the law authorizes the husband's land to be taken *in invitum*, and compensation therefor made for the fee of the same, as, for instance, in those states where the mill-owner is authorized to flow lands which he does not own. At common law a widow cannot have dower of a castle, since, among other reasons, she could not put it to profitable use; and the same reasoning would apply as to lands, though granted by the husband, which have been appropriated to public uses, such as cemeteries, public parks and the like." 1 Washburn on Real Property [5 Ed.] p. 279.

Treating of the same point Judge DILLON says: "As *dower* is not the result of contract, but is a positive legislative institution, it is constitutionally competent for the legislature to authorize lands to be taken by a municipal corporation for a market, street or other public use, upon an appraisement and payment of their value to the husband, the holder of the fee; and such taking and payment will confer an absolute title, divested of any inchoate right of dower. Nor is

a widow *dowable in lands dedicated* by her husband in his lifetime to the public where the dedication is complete, or has been accepted and acted upon by the municipal authorities.'' 2 Dillon's Municipal Corporations [4 Ed.] sec. 594.

In a recent work of pronounced merit, it is said: ''A married woman cannot claim dower in lands dedicated by her husband to the public. It is settled that dower is created by law, and does not exist by virtue of contract, and that it is, therefore, within the power of the legislature to change or destroy the rights of a married woman at any time before they have vested. This rule prevails where dower has been abolished, and an estate in fee substituted. Dedication of land to public use is placed upon the same general principle as that on which rests the right of eminent domain, and it is held that the property interests of the married woman must yield to the public necessity.'' Elliott on Roads & Streets, 108.

Another author says: ''An inchoate right of dower may be taken during the lifetime of the husband, on giving full compensation to the husband. The inchoate right of dower is not such an interest as is capable of assessment. During the life of the husband he represented the fee, and compensation to him appropriated the fee. It has been well held that, when an estate is taken before the decease of the husband, the value of the widow's inchoate right of dower is deemed too uncertain to admit of compensation; that the husband must be regarded as the owner of the entire estate, and that, as such, he is entitled to full compensation for it.'' Mills on Eminent Domain [2 Ed.] sec. 71.

It may not be unprofitable to make some extracts from, and citations of, the adjudicated cases giving support to the positions already quoted from the text books.

Venable v. The Wabash Western Ry. Co.

Thus in *Moore v. The Mayor*, 8 N. Y. 110, by virtue of a statute of New York, commissioners were appointed to assess damages to "the respective owners, lessees, parties and persons respectively entitled unto or interested in the lands," etc. The wife of one of the owners, not having been made a party in the condemnation proceedings, after the death of her husband preferred a claim for dower against the city. The court held: "In the case under consideration, the land was taken against the consent of the husband, by an act of sovereignty, for the public benefit. The only person owning and representing the fee was compensated by being paid its full value. The wife had no interest in the land, and the possibility which she did possess was incapable of being estimated with any degree of accuracy. Under these circumstances, the legislature had the power which I think they have rightfully exercised, to direct that the value of the entire fee should be paid to the husband of the appellant; and that the corporation by such payment, in pursuance of the statute, has acquired an indefeasible title to the premises." In that case the property was of great value, and was appropriated for the purpose of a market place.

In *Gwynne v. Cincinnati*, 3 Ohio, 24, a widow sought to have dower assigned her in grounds occupied by a market-house in the city of Cincinnati; the husband during his lifetime, in conjunction with other owners of property in the same square, agreed to open a way or street through it upon which a market-house was to be erected. It stood upon that part of the square given by one Piatt, a space for a street remaining open on both sides of it. Piatt, in his lifetime, conveyed the property he owned in the square, and his wife joined him in the conveyance. It did not appear that any conveyance was made of the ground covered by the

market-house by either Piatt or wife. Gwinn inter-married with the widow of Piatt, and brought the bill for dower. It was contended on behalf of Piatt's widow that she was entitled to dower, because she had not released it by any act of her own. On the other hand, it was insisted that she was excluded from dower by the grant of the land in question to a public use. The court said: "The street, including the ground in question, was opened and the market-house established by an agreement with the owners of the ground, and under an ordinance of the city council of Cincinnati. The whole space became subject to the same public regulations as the grounds originally laid out into streets, and for other public uses and purposes. The claim of dower must stand upon the same principles that it would stand in any case to the ground thus appropriated. The counsel for the complainants insists that it is a case to be distinguished from that of public grounds condemned for public uses, but the court are unable to comprehend the distinction. When a town is laid out, the law requires the plat to be recorded, and by such record the streets become public highways, and the title to the grounds set apart for public uses is vested in the county for the purposes contemplated. The uses thus created are inconsistent with the exertion of any private right while the use remains; conse-quently, all private rights must be either suspended or abrogated. Such has been the general understanding, not only in this state, but, so far as we are informed, in other states also. A claim for dower in the streets of a town, or in the public jail, courthouse or public offices, would be a novel one, and, if sustained, could not be enjoyed without defeating the original purpose and present use of the grant. It cannot be admitted, for the same reason that it is not admitted to a castle in England. It could yield nothing to the support of

a widow, by a direct participation in the possession, without such an interference with the public right to control the whole subject as to render its enjoyment inconvenient and unsafe, if not impossible."

In *Duncan v. City*, 85 Ind. 104, the husband had donated land to be used as a street, the wife not joining in the grant. After his death she preferred her claim for dower. The court said: "The courts of this country seem to have uniformly held, when the question has come before them, that when lands are appropriated by the exercise of eminent domain, or, what is said to be equivalent to it, the dedication of lands to public use, the dower of the wife is defeated."

In Minnesota a homestead cannot be conveyed except by the joint deed of the husband and wife, and yet it has been held in that state that where a part of a homestead has been taken by a railroad company under the law of eminent domain, and payment made to the husband alone, that the law of homestead would not prevent him from disposing for his own use of the money thus awarded him. *Canty v. Latterner*, 31 Minn. 239.

In Iowa the same rule of law prevails with regard to the necessity of the husband joining his wife in a deed in order to convey their homestead or any interest therein; but where the husband alone had agreed in writing to convey to a railroad company a right of way across the homestead, it was held that, notwithstanding the failure of the wife to sign the agreement, a court of equity would decree specific performance, the court remarking: "Can a husband grant a right of way to a railroad over the homestead property, unless the wife concurs in and signs the conveyance? As applied to the circumstances of this case we answer this question, also, in the affirmative. The right of way is but an easement and does not pass the title, and in this case

it does not, and is not claimed to, affect the substantial enjoyment of the homestead as such.   If the homestead was a single lot, and the right of way occupied it all, so as to destroy the homestead or defeat its occupancy as such, the case would be very different." *Railroad v. Swinney*, 38 Iowa, 182.

With these authorities shedding such a broad light on the subject under discussion, it would seem difficult to stray from the true path of adjudication, and they have been cited and quoted from thus at large, not as doubting the views they enunciate, but because of doubts attempted to be cast upon their applicability to some of the salient features of this case, and that applicability is now for discussion.

There can be no doubt from the text-books and adjudications that, where a railroad is empowered, as in the present instance, to condemn land for public use, it occupies in all respects the same footing as any other corporation or *quasi* corporation, municipal or otherwise, or governmental agency when exercising similar authority to obtain land for a market-place, for a street, highway, jail or courthouse.   The state, in the first place, might directly assert her power in any given instance, to take land for a public use, or it might delegate that attribute of sovereignty to any chosen agency, individual or corporation or municipality or county, the right to exercise that which but for such delegation could only be exercised by the state alone.

In *Olcott v. Supervisors*, 16 Wall. 694, 695, Judge STRONG said:   "That railroads, though constructed by private corporations and owned by them, are public highways, has been the doctrine of nearly all the courts ever since such conveniences for passage and transportation have had any existence.   Very early the question arose whether a state's right of eminent domain could

be exercised by a private corporation created for the purpose of constructing a railroad. Clearly it could not, unless taking land for such a purpose by such an agency is taking land for public use. The right of eminent domain nowhere justifies taking property for a private use. Yet, it is a doctrine universally accepted that a state legislature may authorize a private corporation to take land for the construction of such a road, making compensation to the owner. What else does this doctrine mean if not that building a railroad, though it be built by a private corporation, is an act done for a public use? And the reason why the use has always been held a public one is that such a road is a highway, whether made by the government itself or by the agency of corporate bodies, or even by individuals when they obtain their power to construct it from legislative grant. * * * Whether the use of a railroad is a public or a private one depends in no measure upon the question who constructed it or who owns it. It has never been considered a matter of any importance that the road was built by the agency of a private corporation. No matter who is the agent, the function performed is that of the state. Though the ownership is private, the use is public."

Judge COOLEY says: "Accordingly, on the principle of public benefit, not only the state and its political divisions, but also individuals and corporate bodies, have been authorized to take private property for the construction of works of public utility, and, when duly empowered by the legislature so to do, their private pecuniary interest does not preclude their being regarded as public agencies in respect to the public good which is sought to be accomplished."

"The manner in which the right of eminent domain shall be exercised rests within the discretion of the legislature; it may be, and in point of fact generally

is, effected by a delegation of its power to an agent. That agent may be a corporate body, carrying on a work of public utility, though for the purpose of private gain.   *   *   *   The instances of the delegation of the power of eminent domain of most frequent occurrence are to be found in the case of railroad companies, coupled to the general powers conferred by their charters.   There is usually an authority granted to appropriate lands so far as required for the construction of their tracks." 6 American & English Encyclopedia of Law, 517, 518, title, eminent domain.

"The grant of a right to take land 'for the purpose of a railroad' authorizes the taking of only an easement, leaving the fee with the owner to whom the right of possession reverts on the cessation of the public use; and this is the limited interest usually given by statutes authorizing the condemnation of land for railroads. The property is, however, to be deemed taken for a public use itself, rather than for the peculiar use and enjoyment by the party to whose possession it passes. It does not, therefore, revert to the owner upon a mere transfer of the railroad to another company, nor upon its appropriation to another similar public use." Pierce on Railroads, p. 158.

"That the right [of eminent domain] should be placed in the hands and under the control of a private corporation, detracts nothing from the public nature of the use; for, as was very correctly said by the supreme court of Pennsylvania, in *Hays v. Risher*, 32 Pa. St. 169, that an individual expects to gain by the use of the way, and has private motives for risking the whole of the necessary investment, and acquires peculiar rights in the work, detracts nothing from the public aspect of it. The same can be said of every railway corporation, and of almost every public enterprise." *Coal Co. v. Coal & Iron Co.*, 37 Md. *loc. cit.* 562.

In *Railroad v. Baily*, 3 Ore. 175, it was sought to appropriate lands already used for public purposes, and the court said: "It is wholly immaterial upon this point whether such railway company obtains the property which forms the roadbed by purchase or by the judgment of a court. The general corporation law, and the act of incorporation under it, create the corporation and confer whatever franchises are granted or conferred. It is not the condemnation of property that gives character to the corporation. The judgment of the court is a means of placing the corporation in possession of what is necessary to a discharge of its franchise and its duties to the public. But, when property is condemned, the corporation has no higher or better right to that property than it has to property acquired by purchase. It follows from what has already been said that, whether the right of way is acquired by gift or by purchase or by the judgment of a court, the corporation is so far a public agent that what it holds in its corporate capacity is held for a public use."

When discussing the powers of railroad companies as distinguished from mere private corporations in the matter of the condemnation of lands, the supreme court of Michigan said: "They are the means employed to carry into execution a given power. That private property can be taken by the government from one and bestowed upon another for private use, will not for a moment be contended, and these corporations can only be sustained upon the assumption that the powers delegated are to a public agent to work out a public use. * * * It is obvious that the *object* which determines the character of a corporation is that *designed* by the legislature rather than that *sought* by the company. If that object be primarily the private interest of its members, although an incidental benefit may accrue to the

government therefrom, then the corporation is private; but if that object be the public interest, to be secured by the exercise of powers, *delegated for that purpose,* which would otherwise repose in the state, then, although private interest may be incidentally promoted, the corporation is in its nature public—it is essentially the *trustee* of the government for the promotion of the objects desired—a mere agent, to which authority is delegated to work out the public interest through the means provided by government for that purpose. * * * It argues nothing that compensation is required to be made for property taken, before it can be used; for this is made by the constitution a condition to the exercise of this right by the government itself, and the delegation of the power necessarily carries the incident with it. Nor can it be said that the property when taken is not used by the public, but by the corporators for their own profit and advantage. * * * The grant to the corporation is in no *essential* particular different from the employment of commissioners or agents. The difference is in degree rather than in principle; in compensation rather than in power. * * * It legitimately follows that the tenure of the corporation is in the nature of a trust for the public use, subject to the supervision of the government, while its franchises are but the consideration paid for the faithful execution of this trust." *Swan v. Williams,* 2 Mich. 427.

So, also, in Texas, it has been held that: "The right of the company to occupy with its roadbed Sutor's land depended upon his consent then given or upon a judicial condemnation. A railroad is a public highway (Constitution of Texas, art. 10, sec. 2); * * * and especially is this true so far as the acquisition of the right of way is concerned; for, upon no other theory, could the right of eminent domain be conferred upon a

railroad corporation. In this respect the doctrine of dedication, or rather of estoppel *in pais*, would apply to the right of way for a railroad the same as to any other public highway." *Railroad v. Sutor*, 56 Tex. 496.

These authorities, as well as those heretofore cited, show in the most convincing manner that the *dedication* of land to public use on behalf of a railroad company occupies in legal contemplation the same place as does *condemnation* for a similar purpose; both are but *means to the same end;* both have the same object in view, for "dedication is an appropriation of land to some public use, made by the owner of the fee" (Angell on Highways [3 Ed.] sec. 132), while condemnation is but the appropriation *in invitum* of the land in the absence of the owner's consent. The only difference between them is, the former is *voluntary*, the latter *compulsory;* both are *mere conduits* through which flows the current of eminent domain.

In the present instance the charter of the original company made either method effectual, and only on the failure of the first was the second method permissible; the prior was indeed a condition precedent to pursuing the latter method as all of our own reports on the subject show. It is conceded in this case that where the purpose is to appropriate lands to a public use, *e. g.*, for a street, highway, jail, courthouse or market-place, that the husband, as the owner of the fee, represents the wife, and that his deed or dedication is equally as effective in barring the wife's inchoate dower, as would be condemnation proceedings; but a similar operative effect as to a deed to another public use, to-wit, a right of way to a railroad company is denied. We are satisfied from an examination of the authorities, and from the very nature and reason of the case, that this distinction is unwarranted and unsound, and will not bear the

test of judicial scrutiny.   There is no warrant for the assertion, and there is no authority or reason for the assertion, that one public highway dedicated by deed to public use should escape the incubus of inchoate dower while another highway proclaimed by the constitution of the state to be a public highway and equally dedicated by deed to public use should be compelled to bear such a burden unless resort were had to condemnation proceedings.   What particular virtue inheres in such proceedings?  Why should a judgment which condemns an easement, a right of way over a man's land, do more than that man's deed executed for the same purpose? These questions answer themselves.

Though, in case of a railroad, the land in one sense is appropriated or accepted for the private gain of the particular railroad company, yet the use is none the less a *public one*, as all the authorities show; and, but for the fact that the use *is* a public one, there would be no basis laid in either law or fact for the exercise of the right of eminent domain—in either of the methods mentioned.   Wherever the right of eminent domain exists there exists also as its companion and legal equivalent the right to accept a voluntary dedication.   The two rights are the inseparable and inevitable concomitants of each other.   To rule otherwise would be to deny the cogent reasoning of the authorities cited; to rule otherwise would produce these anomalous results: That a railroad company, though ever so desirous of doing so, could not accept a voluntary relinquishment of the husband to lands for a right of way without incurring long years afterwards, upon the death of the husband, the peril and the penalty of a demand for dower, consummate and unsatisfied, in a right of way for which compensation in full had long since been paid. Under such a ruling, a railroad company would of necessity be forced to reject the proffered deed, the

amicable settlement, and be driven to condemnation proceedings, in order to cut off inchoate rights, possibilities and expectancies, something, the value and duration of which the law as yet has furnished no method and provided no machinery for estimating. Such a ruling would be to encourage litigious strife, something assuredly not favored by the law.

Besides, if in the hypothetical case the parties *"could agree"* there would be *no basis for proceedings to condemn,* because the essential jurisdictional fact of non-agreement would be wholly lacking; and, therefore, there could be no such proceeding had, except by practicing a fraud on the court by making an averment in the pleading, at war with the real fact, that the parties litigant had *failed to agree.*

But it is persistently urged that the case of *Nye v. Railroad,* 113 Mass. 277, supports the contention of the plaintiff that her dower is not bound by the deed of her husband. But, after a careful reading of that case, it is not thought it yields that claim any support whatever. The facts of it are few, plain and simple; here they are: In 1826 Nye bought the land and secured payment of the purchase money by a mortgage which his wife did not sign. In 1828 his equity of redemption was sold under execution to Washburn, who conveyed to Newcomb, who in 1872 conveyed the land to the railroad company, who purchased the same for a freight station outside of the location of their road. The deed was in warranty form and contained no restriction as to the use of the land. In 1846 Newcomb satisfied the mortgage. Nye died in 1873, whereupon his widow sued for her dower. And thereupon it was ruled that the demandant had an inchoate right of dower in the premises at the time it was conveyed to the tenant by deed in common form. Then it is pointed out in the opinion that two methods are provided by the statute whereby a railroad company

can take land for depot and station purposes:    *First*, by purchase and conveyance from the owner; *second*, if the owner refuses to sell, by application, etc., and the assessment of damages; that by the first, *if the deed is without restriction*, the corporation obtains. *a fee in the soil just as a natural person would do*, and the corporation may convey the land when no longer necessary for its purposes to whomsoever it will; but that by the second method the corporation simply acquires an easement in the land, and, the use being abandoned, the easement is extinguished and the land reverts to the owner of the soil.    And upon these premises it was properly ruled that the land in question was subject to the demand for dower.

But how different that case in its facts from the one at bar?    *First*, there the land was simply sold under execution, and so the husband never represented his wife in receiving compensation for his land, and so her inchoate dower was not extinguished therein for that reason, and the land passed to the first and subsequent purchasers with the burden of inchoate dower fettered to it; *second*, the land in that case was conveyed by the last purchaser to the railroad company *in fee*, unhampered by a single restriction and unburdened by a single use, and the railroad company took it just as a *"natural person"* might have done.    Here, on the contrary, the husband represented the wife, received or waived compensation for the land, and only granted an easement, which is precisely just what that company would have gained at the end of condemnation proceedings.

For these reasons *Nye's case* is not authority in the case before us, and, if it were, we would not follow it in opposition to such an array of well-considered cases as already cited.

II.   Finally,.this is the first suit in this state, that we are aware of, that in circumstances like the present a suit for dower has been brought against a railroad company.   The common consent and opinion of the legal profession in this state has been that it was not necessary to make a wife a party in order to bar her inchoate right of dower, either as to.a railroad right of way or other public highway.   This of itself is a very pregnant circumstance, and very good evidence of what the law is.   *State v. Meyers*, 99 Mo. *loc. cit.* 114; Sedgwick on Constitutional & Statutory Law [2 Ed.] 213, *et seq.*, and cases cited.

In a case of the house of lords, on the statute, 27 Henry VIII., Lord HARDWICKE said:   "The opinion of conveyancers in all times and their constant course is of great weight.   They are to advise, and, if their opinion is not to prevail, must every case come to law? No; the received opinion ought to govern."   And Lord MANSFIELD said:   "Consider also the usages and transactions of mankind upon [the statute]; the object of all laws, with regard to real property, is quiet and repose."   *Earl v. Drury*, 2 Eden's Ch. 61.

In *Scanlan v. Childs*, 33 Wis. 663, the court say: "The general understanding of a law and constant practice under it, for a period of over twenty years, by all officers charged with the execution of it, unquestioned by any public or private action, is strong if not conclusive evidence of the true meaning."

In *Packard v. Richardson*, 17 Mass. 144, the court say: "A contemporaneous is generally the best construction of a statute.   It gives the sense of a community of the terms made use of by a legislature.   If there is ambiguity in the language, the understanding and application of it, when the statute first comes into operation, sanctioned by long acquiescence on the part

of the legislature and judicial tribunals, is the strongest evidence that it has been rightly explained in practice."

For reasons already given, it is unnecessary to pass upon the grounds alleged for recovery in the second count in the petition.

The judgment of the lower court should be affirmed. All concur except BLACK, J., who dissents.