SARAH M. WADE *v.* J. F. HENNESSY, D. C. LINSLEY, BURLINGTON & LAMOILLE R. R. CO. & OTHERS.

[IN CHANCERY.]

*Mortgage.   Foreclosure.   Railroad.   Eminent  Domain.*

1. A railroad company by a warrantee deed from a mortgagor of lands for railroad purposes takes only the right and title of the mortgagor, the mortgagee being ignorant of the transaction; and in a foreclosure proceeding the company can make only the same defence that the mortgagor could.
2. And this is so although the railroad could have taken the land under the exercise of the right of eminent domain.
3. And, although the mortgagor paid the consideration received for the deeds to the mortgagee.
4. R. L. ss. 3367, 3369, when the owner of lands condemned for railroad purposes is unknown, construed.

FORECLOSURE of mortgage.   Heard on bill, answer and master's report, February Term, 1882, Orleans County.   REDFIELD, Chancellor, decreed a foreclosure, fixing the time and amount of payments.   The facts are stated in the opinion.

*Brigham & Waterman,* for defendants.

Linsley was the agent of the R. R. Co.   The case stands as though Hennessy had dealt with the company.   A railroad company may take land by purchase for the construction of its road. R. L. s. 3356.   And in such cases the rights of the company in the construction of their road are the same as though they had taken the land by compulsory process.   *Norton* v. *Vt. Cen. R. R. Co.,* 28 Vt. 99 ; *Troy & Boston R. R. Co.* v. *Potter,* 42 Vt. 265.   The aid of commissioners cannot be invoked unless the parties fail to agree.   R. L. s. 3359.   In case of such failure, notice need be given to the occupant or owner, only.   R. L. ss. 3360, 3363.   In this case, Hennessy, with whom the contract was made, was both the owner and occupant, and the very person with whom

the company was required by statute to deal. By the general current of authorities, the mortgagor in possession is regarded as the owner, whether there has been a breach or not; and in the absence of any explicit statutory requirement, a settlement with him, and payment, in a case of this kind, is conclusive on the mortgagee, even if not notified. 4 Kent, 160; *Hooper* v. *Wilson*, 12 Vt. 695; Thompson Highways, 191; *Contant* v. *Catlin*, 2 Sandf. Ch. 485; *Farnsworth* v. *The City of Boston*, 126 Mass. 1; 2 Wash. Real Prop. marg. p. 548; *City of Norwich* v. *Hubbard*, 22 Conn. 587; *Whiting* v. *City of New Haven*, 45 Conn. 304.

*L. H. Thompson*, for oratrix, cited *Hagar* v. *Brainerd, et al.*, 44 Vt. 300, and argued substantially as the court hold.

The opinion of the court was delivered by

Ross, J., This is a petition for the foreclosure of a mortgage. It is defended by D. C. Linsley and the Burlington & Lamoille Railroad Company. Subsequently to the execution of the mortgage, the defendant company located its road across the mortgaged premises, and constructed the same under a contract with Mr. Linsley by which he was to pay the land damages, construct and operate the road until the company paid him for so doing. In the execution of this contract, Mr. Linsley took from the mortgagor warrantee deeds, to himself, of that portion of the mortgaged premises required for the construction of the railroad, it being stated in the deeds that the land conveyed was to be used for railroad purposes. His agent, the engineer, who conducted the negotiations and paid the consideration for the deeds to the mortgagor, knew of the existence of the mortgage, which was duly recorded. He testified, and so the master has found the fact to be, that the agent did not request the mortgagor to have the consideration applied in reduction of the mortgage debt, but on the representations of the mortgagor, that his place was pretty nearly paid for, took his chances. The mortgagor paid the money received for the deeds conveying the right of way with other money to the oratrix, who applied the same in reduction of the mortgage debt. The oratrix, who was during all this time the owner of mortgage

notes, resided in Boston, and had no communication with Mr. Linsley, or the railroad company, nor with any one acting in their behalf, and did not know, until long after it was done, that the railroad was constructed across the mortgaged premises, nor that the mortgagor had conveyed a portion of the same to Mr. Linsley for that purpose, nor that the consideration of the same had been paid to her by the mortgagor. The mortgagor is now insolvent, and the mortgaged premises now worth less than the amount due on the mortgage. These are the facts substantially as they appear in the master's report, on which Mr. Linsley and the railroad company defend against the foreclosure of the mortgage, as to that portion of the premises conveyed for railroad purposes.

By the warrantee deeds as against the oratrix, Mr. Linsley, and the railroad company under him, took only the title of the mortgagor, and under them can only make the same defence which the mortgagor could have made. He took his chances against the mortgage, and took the covenants of the mortgagor to secure him against any loss resulting from those chances. That those covenants are unavailing, through the insolvency of the mortgagor, is no concern of the oratrix ; and the loss, if any, resulting therefrom, is not to be visited upon her. She was not asked to, and did not, guarantee the title of the mortgagor. On the contrary, by the mortgage deed on record undischarged, she warned everybody that it was precarious, and dependent upon the mortgagor's payment of the mortgage debt. That she received from the mortgagor, as his money, the consideration paid for the deeds of the mortgagor, does not affect her right to insist upon the entire mortgaged premises remaining security for that portion of the mortgage debt which remains unpaid. As regards the mortgaged premises, Mr. Linsley and the railroad company stand the same as any purchaser of the equity of redemption of the mortgagor. The purposes for which the purchased equity of redemption in the portion of the premises conveyed were to be used, do not vary the legal relations of the purchaser to the holder of the mortgage debt ; nor does the fact that the railroad company, under the exercise of the right of eminent domain, might have taken the oratrix' interest in the mortgaged premises, and thereby obtained an

14

unimpeachable title against her. It did not exercise that right, but contented itself with the right it acquired through the deeds to Mr. Linsley as a purchaser from the mortgagor. To the exercise of the right of eminent domain, it is indispensable that compensation be made to the *owner* of the property taken, by the payment of an equivalent in money. Art. 2 of Bill of Rights, p. 32, R. L. Payment to some other person, not the owner, and not entitled to the money, would give the railroad company no right by the exercise of the right of eminent domain, to divert the oratrix' title as mortgagee in the premises. All the provisions of the statute, R. L. ss. 3367 to 3369, relative to securing the title to land condemned for railroad purposes by the exercise of the right of eminent domain, where there are conflicting claims to the title, or the lands taken are encumbered by a mortgage, show that the railroad company, to protect itself by the payment of an equivalent in money for the lands taken, must make all the parties claiming the title parties to the proceedings, and have their respective rights to the money adjudicated, and so give the several parties the right to be heard, and make it sure that the party entitled receives the equivalent in money. Where a railroad company contents itself with acquiring the right to use lands for the purpose of constructing, maintaining and operating its road, by gift or purchase, it must stand like any other donee or purchaser, and protect itself by securing in that way the rights of all legally interested in the property donated or purchased. It takes by the gift or purchase only the rights therein of the donor or vendor. Standing on those rights, Mr. Linsley, and the railroad company through him, have secured only the right to redeem the premises from the oratrix' mortgage thereon, the same right which the mortgagor himself had. If they redeem, doubtless they can be subrogated to the oratrix' right under the mortgage to the whole farm. If they decline to redeem, they must yield to her superior right to the whole mortgaged premises, and seek protection, if at all, by the exercise of the right of eminent domain under the statute against her.

No other error is claimed to exist in the decree of the Court of Chancery. The decree affirmed, and cause remanded.