BAKER v. THE ATCHISON, TOPEKA & SANTA FE RAIL-
ROAD COMPANY, *Appellant.*

In Banc, May 28, 1894.

1. **Dower:** RAILROAD: RIGHT OF WAY. A widow is not entitled to
dower in land which her husband conveyed by general warranty
deed, and which his grantee conveyed by similar deed to a railroad
company, and which is used by it for a right of way, although she did
not join in the conveyance to her husband's grantee or to the com-
pany. *Venable v. Railroad,* 112 Mo. 103, *affirmed.* (BLACK, C. J., GANTT
and MACFARLANE, JJ., *dissenting.*)

2. ———: ———: ———. The owner of the land at the time of the
conveyance to the railroad represents the fee under the statute. (R.
S. 1889, sec. 2734; *Ibid.,* G. S. 1865, p. 351, sec. 1) and his convey-
ance carries with it all inchoate dower rights.

*Appeal from Knox Circuit Court.*—HON. B. E. TURNER,
Judge.

REVERSED.

Plaintiff, the widow of Melker Baker, on the nine-
teenth of March, 1891, brought this action for the
assignment of dower in a certain strip of ground used
by defendant corporation for its track, roadbed and
right of way. Melker Baker died in March, 1890. The
answer admitted the incorporation of defendant, and
that it had obtained such right of way for the purposes
of its railroad over the land in controversy from the
legal owners thereof, and that it is now in posses-
sion of said strip of ground. The reply was a general
denial.

The only evidence before the court, sitting as a
jury, consisted of the following agreed statement of
facts:

"1. It is admitted that Melker Baker, deceased,
was, in his lifetime, seized in fee of all the lands
described in the petition; that plaintiff was his wife
while so seized; that she is now his widow; that she
has never relinquished dower in any of said lands."

"2.   It is admitted that on the twentieth day of March, 1865, said Melker Baker conveyed, by a general warranty deed of that date, to Jacob G. Baker, all the lands described in the petition.

"3.   It is further admitted that defendant is a railroad corporation, and is in possession of, and operating its line of railroad over, the lands described in the petition; that defendant obtained its right of way over one-half of said lands by a bill of condemnation, regularly prosecuted in the circuit court of Knox county, Missouri, against the legal owners thereof; that defendant purchased the remaining half of said lands, by virtue of general warranty deeds, from the several grantees of said Jacob G. Baker, in 1887, and has ever since been in possession thereof as a right of way for the purposes of its said road.

"4.   It is further agreed that the value of the lands described in the petition is $655; that the widow is sixty-three years old, and that the court shall fix the value of the dower interest, if any dower be allowed; and this agreement shall not bar right of appeal, writ of error, or other proceedings for review in the supreme court of Missouri on the part of either party."

At the close of the case, the defendant asked a declaration of law in the nature of a demurrer to the evidence, which was denied. Thereupon the court assessed the total present value of plaintiff's dower at $93, and the yearly value at $12.08; found that plaintiff was entitled to dower, and ordered and adjudged that defendant pay plaintiff the said sum of $12.08 annually in lieu of dower. In consequence of this ruling, defendant has appealed to this court.

*Gardiner Lathrop*, *L. F. Cottey* and *S. W. Moore* for appellant.

This case falls within the decision of *Venable v. Railroad*, 112 Mo. 103, and is controlled by it.

*O. D. Jones* for respondent.

(1) The judgment should be affirmed on the authority of *Nye v. Railroad*, 113 Mass. 227. (2) It devolves on an appellant to show affirmative error to procure a reversal. It does not appear from the bill of exceptions or abstract what was the width of the right of way claimed by defendant, whether one, two, or five hundred feet. The width or necessary extent of a right of way is a judicial question. *City v. Hancock*, 91 Mo. 215; *Aldridge v. Spear*, 101 Mo. 400; *Railroad v. Railroad*, 94 Mo. 535. (3) The legislature can not destroy an inchoate right of dower. *Williams v. Courtney*, 77 Mo. 588. (4) If the contention of appellant in this case is to prevail, we think the corporations will soon demand the right to vote, marry, hold office and take the sacrament.

SHERWOOD, J.—Defendant relies on *Venable v. Wabash, etc., R'y Co.*, 20 S. W. Rep. 493; 112 Mo. 103, as decisive of this case, and so it is; for it was there ruled that a conveyance of land by the owner to a railroad corporation for a right of way as effectually extinguished the dower right of his wife, as if such right of way had been regularly condemned by the usual proceedings in a court of competent jurisdiction. One-half of the land which forms the subject of the present litigation was appropriated by the defendant corporation in the ordinary way. Afterwards, the other half of the strip used for a right of way was acquired by such corporation in 1887, through general warranty deeds made by the grantees of Jacob G. Baker, who, in 1865, had acquired, by general warranty deed from Melker Baker, the land through which the railroad of the defendant company now runs.

At that time, that is, in 1887, the general law in

regard to the acquisition of lands for railroad purposes was then in force. Under that law it was competent for a railroad company to acquire land for such purposes in one of two ways: *First*, by voluntary relinquishment, as in the present instance, or, *second*, if the owner could not agree on the proper compensation to be made, by proceeding in the circuit court to condemn such land, and in such proceeding only the *"owner"* of the land was necessary to be made a party. Even when married women owned the land in fee they were not required to be joined in the proceedings; but it was declared that "their husbands must be made parties defendant," and the section in question, after setting forth that the owners of the land "shall be made parties defendant," concludes by declaring that: "It shall not be necessary to make any persons party defendant in respect to their ownership, unless they are either in actual possession of the premises to be affected, claiming title or have a title to the premises, appearing of record upon the proper records of the county." 1 R. S. 1879, sec. 892. The same statutory provision was in force long before 1879. G. S. 1865, p. 351, sec. 1; and R. S. 1855, cited in margin of the General Statutes. And this is the law to-day. R. S. 1889, sec. 2734.

Under these statutory provisions, plaintiff, the wife of Melker Baker, could not have been made a party defendant to the condemnation proceedings against the legal owners of the land; there was no law for it, and, at that time, even if she had been brought into court, her husband living, there were no scales and no measure provided whereby the value of her inchoate dower, with its remote and contingent possibilities, could have been weighed or estimated. Mills on Eminent Domain [2 Ed.], sec. 71, and cases cited.

The owner of the land, *whoever he is*, represents the fee, and compensation to him appropriates the

entire fee, and he is the only one to be looked to, when the right of way is to be acquired, whether by condemnation or otherwise. There is, and there can be, no difference in this regard between dedication and condemnation. The former being voluntary and the latter compulsory; both are mere conduits through which flows the current of eminent domain. *Venable's case, supra.*

For the reasons given, the judgment should be reversed and the petition dismissed.

This cause has been transferred to court *in banc*, and we reverse the judgment and dismiss the petition; and in the foregoing opinion Brace, Barclay and Burgess, JJ., concur; Black, C. J., and Macfarlane and Gantt, JJ., dissent.

Black, C. J.—*(dissenting)*. In my opinion, the judgment in the *Chouteau case* should be reversed and the cause remanded, and the judgment in the *Baker case* should be affirmed, for the reasons stated in the original opinion filed in the case of *Venable v. Wabash R'y Co.*, 19 S. W. Rep. 45.

It is possible cases in condemnation may arise where the inchoate right of dower should be protected in some proper form of proceeding, but the cases in hand do not present any such a question, and I have given to it no consideration, and therefore express no opinion on that subject.

Gantt, J. *(dissenting)*—Having concurred in the decision in *Venable v. Wabash Western Railway Company*, 20 S. W. Rep. 493, 112 Mo. 103, it occurred to me that the opinion of my learned brother in *Chouteau v. Missouri Pacific Railway Co.*, in division number two, *ante* p. 375, was not in harmony with the opinion in the *Venable case*, and for that reason I dissented in division, not, however, without much hesita-

tion.  This case of Margaret Baker against the Atchison, Topeka & Santa Fe Railway Company subsequently arose and involved some of the same questions, and I deemed it advisable to let it also abide the final judgment of the court *in banc*.

As the *Chouteau case* induced my dissent I prefer to state first my reasons for so doing upon that record. When the *Venable case* was decided in division number one, by Judge BLACK, 19 S. W. Rep. 45, all of the judges of that division, as then constituted, concurred, except Judge BARCLAY, who was absent.

In that opinion Judge BLACK called attention to the case of *Nye v. Railroad*, 113 Mass. 277, as supporting his view, that, when the company did not resort to condemnation, but *purchased by deed*, the wife, not joining and relinquishing her dower, would not be barred.

Afterwards SHERWOOD, C. J., in his opinion for the court *in banc*, adverted to the *Nye case* and said: "But it is persistently urged that the case of *Nye v. Railroad*, 113 Mass. 277, supports the contention of the plaintiff that her dower is not bound by the deed of her husband.  But, after a careful reading of that case, it is not thought it yields that claim any support whatever. The facts of it are few, plain and simple; here they are: In 1826 Nye bought the land and secured payment of the purchase money by a mortgage which his wife did not sign.  In 1828 his equity of redemption was sold under execution to Washburn, who conveyed to Newcomb, who, in 1872, conveyed the land to the railroad company, who purchased the same for a freight station outside of the location of their road. *The deed was in warranty form and contained no restriction as to the use of the land.*  In 1846 Newcomb satisfied the mortgage.  Nye died in 1873, whereupon his widow sued for her dower.  And thereupon it was ruled that

VOL. 122—26

the demandant had an inchoate right of dower in the premises at the time it was conveyed to the tenant by deed in common form. Then it is pointed out in the opinion that two methods are provided by the statute whereby a railroad company can take land for depot and station purposes: *First*, by purchase and conveyance from the owner; *second*, if the owner refuses to sell, by application, etc., and the assessment of damages; that, by the first, *if the deed is without restriction*, the corporation obtains *a fee in the soil just as a natural person would do*, and the corporation may convey the land, when no longer necessary for its purposes, to whomsoever it will; but that, by the second method, the corporation simply acquires an easement in the land, and, the use being abandoned, the easement is extinguished and the land reverts to the owner of the soil. *And upon these premises* it was properly ruled that the land in question was subject to the *demand for dower.*

"But how different that case is in its facts, from the one at bar! First, there the land was simply sold under execution, and so the husband never represented his wife in receiving compensation for his land; and so her inchoate dower was not extinguished therein *for that reason*, and the land passed to the first and subsequent purchasers with the burden of inchoate dower fettered to it; second, the land in that case was conveyed by the last purchaser to the railroad company *in fee*, unhampered by a single restriction and unburdened by a single use, and the railroad company took it just as a '*natural person*' might have done. Here, on the contrary, the husband represented the wife, received or waived compensation for the land, and only *granted an easement, which is precisely just what that company would have gained at the end of condemnation proceedings.*"

Now, when counsel for Mrs. Chouteau presented her case, it seemed to me the parallel with the *Nye case,*

which had received the approval of every member of the court, was complete.

The Pacific Railroad was chartered by a special act of the General Assembly of Missouri, approved March 12, 1849. Laws of Missouri, 1849, page 219.

By section one of the charter it is authorized to "take, hold, use, possess and enjoy the *fee simple* or other title in and to any real estate, and *may sell and dispose* of the same."

By section 8 it was authorized to "take voluntary relinquishments of the right of way for said road, and the necessary depots and water stations."

By sections 9 and 10, upon a failure to obtain the necessary right of way by amicable agreement, it was empowered to condemn the same, invoking the power of eminent domain for that purpose.

The statute of Massachusetts in force when the railroad obtained the land in the *Nye case* was the General Statutes of 1860, chapter 63, section 19, and provided that "a [railroad] corporation may purchase or otherwise take land or materials necessary for making or securing its road and for depot and station purposes. "If it is not able to obtain such land or materials by an agreement with the owner, it shall pay such damages therefor as the county commissioners estimate and determine," which damages were "to be estimated  *  *  * in the manner provided in laying out highways."

It will be observed that the Missouri statute and the Massachusetts act are the same in principle, save only that section 1 of the charter of the Pacific Railroad *has and contains no restrictions whatever upon its right, by gift or purchase, to take and hold lands in fee simple, and sell and convey the same.* So that to begin with, the corporation which acquired Nye's land obtained under a statute identical in principle with that under which the Chouteau title was acquired.

Now, the facts in the Chouteau case are, that plaintiff was married to P. M. Chouteau December 20, 1849, and he died August, 1885. Mrs. Chouteau made formal demand on defendant for her dower June 6, 1887.

It was shown by the evidence that, prior to April 26, 1850, Thompson McDaniel was the owner in fee simple of the lands in which the dower is demanded by regular conveyances from the government of the United States down, and that, on that date, McDaniel and wife, for $800, conveyed said lands by general warranty deed to Guinotte, Magis & Co., and Pierre M. Chouteau & Co., one undivided half to Pierre M. Chouteau & Co., to have and to hold, to them and their heirs forever.''

On June 18, 1850, Pierre M. Chouteau alone, *his wife*, the plaintiff herein, *not joining*, by warranty deed, conveyed his half of said real estate to Berenice F. Chouteau.

On July 15, 1853, Berenice F. Chouteau conveyed said one-half to Joseph Guinotte, and on March 5, 1867, said Joseph Guinotte by warranty deed, *without any conditions* or *restrictions*, conveyed to the Pacific Railroad the thirty-two lots in question in *addition to a strip of land ten feet wide the then right of way* of the road, all of which constituted a part of said real estate sold by Pierre Chouteau to Berenice Chouteau. It was admitted that the defendant is the successor of and succeeded to all the rights of the Pacific Railroad in and to said real estate. It was shown that Pierre Chouteau in 1850 had no partner, but did a warehouse business under the style of P. M. Chouteau & Co.

The defendant offered the acts incorporating the Pacific Railroad and showed that it had been occupying the lots by its tracks since 1869. So that, while Nye's equity of redemption was sold under execution, Chouteau conveyed his title by his warranty deed to Berenice Chouteau. In neither case, however, did the

wife join, and in neither was her inchoate right of dower affected by the conveyance at the time. R. S. 1845, chap. 54, sec. 8; R. S. 1889, sec. 4525. As already seen, it was also said that, when Nye's equity of redemption was sold under execution, *his wife's inchoate dower was not barred because he did not represent her* in receiving compensation for the land.

Certainly we will all agree that, when a married man in this state sells and conveys lands in which he is seized of an estate of inheritance, and his wife does not join and relinquish her dower, as to her dower, he does not represent her in receiving whatever compensation he may for the land, and she is not barred or estopped from demanding her dower, if she survives him. So that, if in the *Nye case* "the first and subsequent purchasers took the land burdened with inchoate dower," it seems irresistible to me, that Berenice Chouteau and Guinotte and their grantee, the railroad company, took the lands in suit, burdened with Mrs. Chouteau's inchoate dower.

In other words, it seemed to me in division, and now, that there could be no substantial distinction drawn between the *Nye case*, and that case, and as we had all so unreservedly declared that "upon the premises" in the *Nye case*, it was properly ruled that the land in question was subject to the demand for dower, I could not see how we were to deny the demandant her dower in the *Chouteau case*, seeing that she had brought herself into a like situation. But a different conclusion was reached by the majority of our division. *Chouteau v. Railroad*, 22 S. W. Rep. 458.

In the opinion in division in that case, a distinction was attempted to be drawn between the *Nye case* and that case, in this, that it was said, "In *Nye's case* the railroad company obtained the entire fee, by reason of the deed made, 'just as a natural person would do,'

and the corporation could convey the land thus obtained, when no longer necessary for its purposes, to whomsoever it would. Not so in the case at bar. No fee was obtained,—only in form and outward semblance; not in fact or in law. And whatever right was acquired by the defendant company or its predecessor could not have been disposed of, except as a whole, and not in detached or fractional portions; and, when disposed of, could only have been disposed of to another railroad corporation for those uses, and those alone, for which the original grant was made." In other words, the decision predicates the proposition that the Pacific Railroad merely acquired an easement in this land and not a title upon the assumption that the fee did not pass by Guinotte's deed to the company. And the conclusion follows that a widow is not dowable of an easement.

Upon consideration I can not regard this as sound, either at common law, or under the charter of the Pacific Railroad, or the decisions of this court. It was incident to every corporation aggregate, at common law, to take, hold, transmit in succession, and to alienate property, *real* and *personal;* and this power constituted one great element of the convenience and usefulness of these bodies politic. 1 Blackstone's Commentaries, 468; 1 Minor's Institutes, 547; 1 Morawetz on Private Corp., sec. 327.

In *Page v. Heineberg*, 40 Vt. 81, the court said: "At common law corporations generally have the legal capacity to take a *title in fee to real property*, some of the cases holding that it is incident to every corporation."

In England they are only restricted by statutes of mortmain. A reference to the first section of the act chartering the Pacific Railroad will show that it labored under no disability either "to take, hold, use, possess

or enjoy *in fee simple any real estate or sell or dispose of the same.*" How a legislative grant could be broader or more unrestricted in this regard I am unable to conjecture. Moreover, we have no statutes of mortmain. *Chambers v. St. Louis,* 29 Mo. 543. I am at a loss to understand why we should enter upon a discussion as to the power of the company to take a fee simple in this land in this case.

The charter grants the power in express words; Guinotte's deed conveys a fee simple *without conditions, restrictions or reversion.* Guinotte and his heirs are forever estopped by that deed from denying its power to take, hold, or convey away a fee simple. *Ragan v. McElroy,* 98 Mo. 349.

The state alone can complain, and it has taken no steps to declare a forfeiture and we are confronted with the anomalous proposition that a corporation authorized by its charter *to take lands in fee simple and convey the same,* may receive *a deed to lands in fee* by its own voluntary purchase, and yet when called upon to bear the burdens incident to such estate in the hands of all other tenants in fee simple, it gravely asserts its incapacity to take a fee. In my opinion it is utterly untenable. Having sought to exercise the right, and having had it accorded, without question, there is no foundation for its position.

At the risk of iteration it must be borne in mind that there is and can be no question of illegality upon that record. It is conceded, the company acquired it for legitimate terminal or station facilities. It is not hinted by Mrs. Chouteau that, in purchasing this land, the Pacific Railroad exceeded its charter rights. The question is one entirely of the nature and character of the estate it was authorized to take in property it should purchase, under its charter, and the general principles of law, and we confidently assert that there is

no prohibition either in the common law or the charter of the Pacific Railroad which would prevent its acquiring an absolute fee simple to these lots by purchase. On the contrary it was expressly enabled so to do by the plainest language and at that time it was the general policy of the state. R. S. 1845, chap. 34, sec. 1; Gen. Stats., 1865, chap. 62, p. 326, sec. 1; *Callaway Minning, etc., Co. v. Clark*, 32 Mo. 305.

In the *Nye* case it was expressly ruled, under a similar provision, that the railroad, by purchase, obtained a fee simple, just as a private person would, and we all agree that decision was right.

In *Whitehead v. Vineyard*, 50 Mo. 30, this court, construing the charter of the Iron Mountain Railroad which contained the words "may take, hold, use, possess and enjoy the fee simple, or any other title or estate in any lands, tenements, or hereditaments, and the same to sell and dispose of at pleasure" Session Acts, 1850–1851, p. 479, said: "It may be conceded that this power to hold and sell real estate should be held to be subordinate to the general objects of the corporation; *still it is sufficient to pass title, and we need not now inquire further.*"

It is a matter of public history of the state that all the main lines of the state were largely built by land grants. They were permitted to take and convey the fee simple to their grants of land. It was never supposed that they and their grantees were obtaining mere easements over these lands.

But the capacity of the Pacific Railroad to take and convey title in fee simple to lands came directly before this court again in *Land v. Coffman*, 50 Mo. 243. After reciting all these charter provisions, the court, through Judge ADAMS, said: "From these enactments it is evident * * * that it was the intention of the legislature to invest the Pacific Railroad Company with

power to take two classes of real estate; one class it had the right to receive and dispose of at pleasure, for the purpose of aiding in the construction of its road * * * etc.; the other class it can hold only for depots, roadbeds, etc. * * * Although this railroad company may receive grants of land, and sell and dispose of the same for the purposes of its construction and payment of its debts, etc., it can not become a large landed proprietor for purposes not connected with its creation. But the amount of lands it may receive can not be decided *between these parties;* * *. * no one, except the state, can raise the question as to the amount that may be received. This was decided by this court in *Chambers v. The City of St. Louis*, 29 Mo. 576, 577. * * * Judge SCOTT [in that case] says, delivering the opinion of the court: 'There being a right in the city to take and hold lands, *if there is a capacity in the vendor to convey*, so soon as the conveyance is made there is a complete sale; and if the corporation, in purchasing, violates or abuses the power to do so, *that is no concern of* the *vendor or his heirs.* It is a matter between the state and the city.' "

Accordingly, in that case it was held that a good title passed by the conveyance of Johnson to the Pacific Railroad; that it had the capacity to take the title and convey it, and having done so, its grantees obtained a good title. See, also, *Armstrong v. Winfrey*, 61 Mo. 354.

Guinotte and his heirs are forever estopped by his deed and there can be no reverting to them of the title to these lots; and no third party can, or does, question the title, and, if the company having paid for and received a deed in fee simple be allowed to assert it obtained thereby only an easement, a new method of barring dower has been devised. Such a construction;

in our opinion, would be contrary to the analogies of the law.

If this railroad company should sell and convey one of these thirty-two lots to a third person, it seems to me it is too clear for discussion that Guinotte's heirs could not recover it, because the use had ceased for which Guinotte sold them. He conveyed a fee; the company can pass a fee; the question arises, where is the fee pending a conveyance by the company. *Land v. Coffman*, 50 Mo. 243; *Whitehead v. Vineyard*, 50 Mo. 30.

But it is said that this court held, in *Kellogg v. Malin*, 50 Mo. 496, that the company only acquired an easement. That was an action for breach of a covenant of seizin. The petition after averring the purchase of a valuable farm with a covenant of indefeasible title, etc., alleged "that, at the time of the execution of the deed aforesaid, defendant was not so seized of an indefeasible estate in fee simple of a strip of land one hundred feet wide through said lands, which said strip was, by virtue of a decree of the Platte county circuit court, dated August 30, 1860, vested in fee simple in the Platte County Railroad Company, a corporation organized by an act of the General Assembly of Missouri, approved February 24, 1853, in certain proceedings wherein said railroad company was plaintiff and said defendant Malin was defendant."

It is at once apparent that whatever right the railroad company acquired in that case, was obtained by its condemnation proceedings under the eighth and ninth sections of the act, and not under its power to purchase, under the first and eighth sections.

The right to condemn *a right of way* was given by the eighth section of the act, and this was what it was empowered to condemn, and while the ninth section in prescribing the judgment of the court used the words

*fee simple*, the court, correctly taking the whole act together, and considering that the act required in assessing the damages, that the commissioners should take into consideration the advantages and disadvantages and applying the general rule in regard to the condemnation of highways, held that only an easement was created, and the fee remained in the owner, and consequently there was no breach of seizin, but the question of the effect of an absolute deed in fee simple was not mooted; but Judge WAGNER, conceded that it was entirely competent to condemn a fee simple and said that would be "where an absolute and unconditional price was paid for the property."

In this case the deed is not only absolute and unconditional to the whole of the lots in question but the price is absolute and unconditional, the company paying Guinotte $5,000 for lots for which he paid Berenice Chouteau $2,059.75.

In Lewis on Eminent Domain it is said, section 291: "Where the right to acquire property *by purchase exists, a fee may be acquired in the absence of any limitation. And this is true, though the grantee could acquire only an easement by condemnation.*"

It was expressly so held in *Yates v. Van De Bogert*, 56 N. Y. 526; *Holt v. City Council of Sommerville*, 127 Mass. 408; *Heath v. Barmore*, 50 N. Y. 302; *People v. Mauran*, 5 Denio, 389; *Nicoll v. Railroad*, 12 N. Y. 121; *Page v. Heineberg*, 40 Vt. 81; *State v. Brown*, 27 N. J. L. 13; Mills on Eminent Domain, sec. 110.

These decisions hold that, unless restrained by its charter or the general law of the state, a railroad or other corporation may acquire, hold and convey the fee simple in lands; that, while under condemnation proceedings only an easement may be obtained, this does not prevent it from acquiring the fee by deed or purchase, and that, when it does acquire the fee by

deed, subsequent abandonment or change of location will not cause the land to revert to the grantor or his heirs.

In addition to the case of *Kellogg v. Malin*, 50 Mo. 496, the case of *Scott v. Railroad*, 21 Minn. 322, was cited as sustaining the position that only an easement passed. That, also, was *a case of condemnation; not acquisition by purchase;* and the point was made that the act was unconstitutional and in conflict with the constitution of that state.

There is no claim that the laws chartering the Pacific Railroad and authorizing it to purchase necessary land in fee, were in any manner in conflict with the constitution of this state when they were passed. So that I hold that the Pacific Railroad acquired the absolute fee to these thirty-two lots as fully as any private person could have done, and not a mere easement over them, and it could convey one or all or any part of them to whomsoever it saw fit, and that the Missouri Pacific Railway Company acquired all its rights by its deed and purchase from the Pacific Railroad. *Morrill v. Railroad,* 96 Mo. 174; *In re Alexander Ave.,* 17 N. Y. Sup. 933.

II. In the *Chouteau case,* the second ground for denying the demandant her dower was that she was not an "owner" within the meaning of that word as used in the charter of the Pacific Railroad; that her interest was simply an inchoate right of dower not susceptible of computation, and that her husband represents the entire fee, and his voluntary alienation by deed wrought as complete an extinguishment as if it had been condemned by the judgment of a court of competent jurisdiction.

Inasmuch as in the *Chouteau case* there were no condemnation proceedings, and no attempt to proceed under the statute requiring "the owners" to be notified,

it seems to me that the very able discussion and argument offered to show that the wife of a tenant in fee is not an "owner" within the meaning of that statute, is not fairly within the record in that case, for two reasons: *First.* Pierre M. Chouteau was never a party defendant, as "*owner*" of this land, in any condemnation proceeding. He never conveyed this land or an easement in it to any corporation. He never, by his deed or by any act *in pais*, *dedicated* this land to the public, but granted it to a private person, who, according to the laws of this state, took it "with the burden of inchoate dower fettered to it." *Williams v. Courtney,* 77 Mo. 587; *Venable's case,* 112 Mo. *loc. cit.* 124; *Grady v. McCorkle,* 57 Mo. 172; *Nye v. Railroad,* 113 Mass. 277. *Second.* The Pacific Railroad had the option of condemning an easement in these lots or of purchasing the fee simple title in the whole of the lots. It elected to buy and get the title by deed to the whole, instead of a mere easement.

Having chosen to acquire the title by purchase, it stood, and stands, before the law like any other purchaser and took its title subject to any and all incumbrances or infirmities that were attached to that title just as any other private person would have done. Having elected to obtain the fee with all advantages flowing from such ownership, it must also bear any burden imposed by the law of the land or the prior liens of the grantor. Had there been a valid, unsatisfied mortgage on this land, will it be seriously contended that the purchase by the defendant with notice thereof would have, *ipso facto*, satisfied the lien because it was a railroad company with the conditional right to condemn property? Clearly not. *Wade v. Hennessy,* 55 Vt. 207; *Snyder v. Railroad,* 112 Mo. 527; *Sawyer v. Landers,* 56 Iowa, 422.

In *Wade v. Hennessy, supra,* the owner, Hennessy,

mortgaged the land to Mrs. Wade, and afterwards con-
veyed to Linsley that portion of his premises required
to construct the railroad. Linsley then constructed the
railroad, and sold the right of way by deed to the Bur-
lington & Lamoille Railroad Company. The mortgage
debt being unsatisfied, Mrs. Wade brought her action
to foreclose. The point was made there, as here, that
the purchase *had the same effect as condemnation pro-
ceedings*, and the payment to the mortgagor who was
the owner divested the mortgagee's interest; but the
supreme court of Vermont said: "As regards the mort-
gaged premises, Mr. Linsley and the railroad company
stand the same as any purchaser of the equity of
redemption of the mortgagor. *The purposes* for which
the purchased equity of redemption in the portion of
the premises conveyed was to be used, *do not vary the
legal relations of the purchaser to the holder of the mort-
gage debt*; nor does the fact that the railroad company,
under the exercise of the right of eminent domain,
might have taken the oratrix's interest in the mortgaged
premises, and thereby obtained an unimpeachable title
against her. *It did not exercise that right*, but contented
itself with the right it acquired through the deeds to
Mr. Linsley as a purchaser from the mortgagor."

I am, therefore, of the opinion that so much of the
opinion in *Venable v. Wabash Railway Company* as
approves the case of *Nye v. Railroad*, 113 Mass. 277,
*supra*, applies peculiarly to the facts in the *Chouteau
case*, and announces the correct rule, and should con-
trol its decision; and for that reason I think that case
should be reversed, and the cause remanded with direc-
tions to award demandant her dower. In this case it
was conceded that Melker Baker, the husband of the
respondent, Mrs. Margaret Baker, was, in his lifetime,
seized in fee simple of all the lands described in the
petition and that repondent was his wife while so

seized, and is now his widow; that said Melker Baker
died in March, 1890; that prior to his death and on the
twentieth day of March, 1865, said Melker conveyed all
of said lands by warranty deed to Jacob G. Baker, but
his wife the respondent herein did not join in said deed
and did not relinquish her dower therein.    It was
further admitted that the defendant railroad was oper-
ating its line of railroad over the lands described in
the petition; that defendant obtained its right of way
over one-half of said lands by condemnation proceed-
ings regularly prosecuted, in the circuit court of Knox
county, against the legal owners thereof; and that
defendant purchased the remaining half of said lands
by virtue of general warranty deeds from the several
grantees of Jacob G. Baker in 1887.

The circuit court awarded demandant her dower
and computed it at $93, and defendant appeals.    It
will be observed that, *as to the half purchased* of the
grantees of Baker, the case is in all respects similar to
the *Chouteau case*, and for reasons already stated the
judgment in my opinion should be affirmed as to that
half on the authority of *Venable v. Railway, supra,*
and other authorities cited.   As to the other half there
are many difficulties.    The case is not similar to the
*Venable case* in some important respects, for in that case
the husband, *during coverture*, granted and conveyed
directly to the railroad a mere easement over his land,
so long as it should be used as a railroad and no
longer.

It was said in *Railroad v. Swinney*, 38 Iowa, 182,
that the husband could grant a right of way, a mere
easement over his homestead which could not be
aliened without the wife's consent, *because it did not
affect the substantial enjoyment of the homestead as such;*
but, said that court: "If the homestead was a single lot,
and the right of way occupied it all, so as to destroy

the homestead or defeat its occupancy as such, *the case would be very different.*"

So, likewise the supreme court of Texas in a case in which the husband granted a right of way over a community property homestead, while sustaining the grant, said: "If the husband should attempt to so exercise this right as *to destroy the homestead or materially affect it as such,* upon proper application, doubtless the courts would interpose, through their equitable power, to prevent the imposition."

The underlying reason for this last ruling is found in the nature of community property, the rule being, in those states recognizing such property, that the husband during coverture generally has the unrestricted right of alienation in whatever manner and for whatsoever purpose he may deem proper. He is, during coverture, practically the owner; and the court held that this ownership of the husband was not destroyed or impaired by the fact that it may have become a homestead. These two cases, proceeding, as they do, on the express theory that the homestead was not materially injured, do not meet the question in this case. Authority must be found which holds that the homestead or dower may be so absolutely disposed of, that, upon the husband's death, she is bereft of all interest or estate in the land. That is the question we have to meet. It is not a mere damage to the inheritance which the husband might recover at common law, but it is a question of the effect of a conveyance of land in which the wife has an inchoate right of dower. A voluntary conveyance by the husband, either as a gift or for value to any private person could not affect that dower at common law or under our statute. This must be conceded. Nor, on the other hand, do I claim that the right of the state to condemn, for a public purpose, is restricted by the dis-

abilities of the owners, but it seems clear to me that, ,when a corporation has the power to acquire the lands, either by purchasing the fee simple, or by condemning an easement, and *elects to purchase*, it must take its title like natural persons, and no greater right or privileges will attach to its purchase than to other grants, and it will take its estate subject to the same incidents that belong to the same estate in the hands of others—no more, no less.   But, in the *Venable case*, and these two cases of Mrs. Chouteau and Mrs. Baker, the argument for depriving the widow of her dower invariably recurs to the *power of condemnation or of dedication to public use.*

An examination of the condemnation cases, we think, will show that they were prosecuted *during coverture*, and as the "owner" alone was required to be made a party to represent the land, they proceeded on the idea that the husband represented the entire fee, and received the whole compensation, his own and his wife's.

Thus, in *Moore v. Mayor*, 8 N. Y. 110 (1853), under an act of the legislature authorizing the city to condemn certain lands as a part of Fulton Market and providing for payment to *all persons interested*, the lands of Moore were condemned and his wife not made a party and did not relinquish her dower, and the court said: "The land was taken against the consent of the husband, by an act of sovereignty, for the public benefit. The only person owning and representing the fee was compensated by being paid its full value. The wife had no interest in the land, and the possibility which she did possess was incapable of being estimated with any degree of accuracy."

It is thus seen that this case is based upon the proposition that the wife had no interest, and the husband represented the whole interest. Twenty years later

the court of appeals reviewed that decision in *Simar v. Canaday*, 53 N. Y. 298, and said: "Is her inchoate right of dower in the property obtained by the defendant, by the conveyance in which she joined and thereby released that right to him, such a right and interest as the law will protect from injury? This court, in *Moore v. The Mayor*, etc., 8 N. Y. 110, has held that the wife has no interest in the lands of her husband which requires that compensation shall be made to her on the taking of them for a public purpose. The act of the legislature in that case directed a just estimate of the damage to the persons interested in the lands. It was held that, as the right of the wife was contingent upon her surviving her husband, it was such a possibility as might be released, but was not the subject of grant or assignment, nor, in any sense, an interest in real estate. In *Barbour v. Barbour*, 46 Maine 9, it is held that an inchoate right of dower is subject to be modified, changed, or even abolished by legislative enactment. But, notwithstanding these, there are authorities that the inchoate right of dower is a valuable right, and will be guarded and preserved to the wife by the judgments of the courts. There are cases in which it has been held that the release of an inchoate right of dower is a good consideration in equity for an agreement by the husband with the wife, and she has been assisted in enforcing the same. *Garlick v. Strong*, 3 Paige, 440.

"A wife who executes a mortgage jointly with her husband is, nevertheless, entitled to dower in the equity of redemption of which her husband is seized, notwithstanding the mortgage, which right is not affected in equity *unless she is made a party to the foreclosure.* If omitted, she can come in at any time and redeem, notwithstanding a decree and sale in the foreclosure suit. *Mills v. Van Vorhies*, 20 N. Y. 412, where it was

held that the existence of an inchoate right of dower in the equity of redemption of mortgaged premises was a good objection to title by a vendee in an action against him for specific performance of his contract. In that case this strong expression is found: The inchoate rights of the wife are as much entitled to protection as the vested rights of the widow. * * * We think that it must be considered as settled in this state, notwithstanding *Moore v. The Mayor*, and some *dicta* in other cases, that, as between a wife and any other than the state, or its delegates or agents exercising the right of eminent domain, an inchoate right of dower in lands is a subsisting and valuable interest which will be protected and preserved to her, and that she has a right of action to that end."

In New Jersey, lands were condemned for an avenue upon notice to the husband alone. Prior to the award creditors obtained a judgment against the husband. The damages were assessed at $15,000. The award was paid to Cortlandt Parker, Esq., to abide the claim of the wife to her share of the damages. The court said:

"Two questions are presented: *First*, has the wife an interest in this award? *second*, if so, what interest?" It answered the first interrogatory by saying that the wife had a valuable interest in the land, and when the land, by the proceeding, was converted into money, her interest was still recognized and protected in the funds. The court proceeds to determine her rights, and says:

"It is insisted, however, that no portion of this award represents the inchoate dower of the wife in the lands. It is said that, when lands are taken for public use, the mere exercise of the right of eminent domain in a proceeding against the interest of the husband, extinguishes this right of the wife, without notice or

compensation to her.    This is the doctrine undoubtedly enunciated by the text writers.    Dillon on Municipal Corporations, secs. 459–496;    2 Scribner on Dower, p. 551.    The two cases upon which these writers rely, are *Gwynne v. Cincinnati*, 3 Ohio, 24, and *Moore v. City of New York*, 8 N. Y. 110.    The first was an application of the rule to dedicated lands, and the latter to lands taken by condemnation.

"While the conclusion is in conformity with the settled law in England and this country, the conclusion is reached, in the case of *Moore v. The City of New York*, by a general assertion that the inchoate interest of the wife *was without value*.    GARDNER, Judge, says: 'The wife had no interest in the land, and the possibility she did possess was incapable of being estimated with any degree of accuracy.'    This was said in the face of the fact that, years before, Chancellor WAL-WORTH had propounded and acted upon a rule for the computation of the value of this very interest.    *Jackson v. Edwards*, 7 Paige, 408;    *Bartlette v. Vanzandt*, 4 Sandf. Chy. 396.    The broad statement in *Moore v. The City of New York* is not only opposed to the weight of authority elsewhere, but has been repudiated or modified in latter cases in that state.    *In the Matter of Central Park Extension*, 16 Abb. Prac. R., 68;    *Simar v. Canaday*, 53 N. Y. 298.    (See, also, *In re New York & Brooklyn Bridge*, 27 N. Y. Supp. 597.)

"The extinguishment of dower by condemnation means no more than this, that, as against the state, no widow can claim dower in lands devoted to public use. It had its origin at a time when the sovereign power in the state could assume its right to the use of the property of the subject without compensation.    The right was exercised by the removal from possession, of all parties whose occupancy was inconsistent with the object of the public use.    *    *    *    The widow was

merely in the same position as any other person claiming
an interest in the land.   *   *   *   Thus it was said by
COKE, 'of a castle that is maintained for the necessary
defense of the realm, a woman shall not be endowed,
because it ought not to be divided, and the public shall
be preferred before the private.'" *Wheeler v. Kirtland,*
27 N. J. Eq. 534.

It is apparent at once that the doctrine was not
based upon the fact that the inchoate dower was value-
less.   And, as under our constitution no private
property can be taken or disturbed without just com-
pensation, the other reason also fails, to wit: that the
public can take without compensation.   The New Jer-
sey court concluded that the inchoate right of the wife
was represented in the fee and its value passed into the
award and held she was entitled to have it commuted
against the creditors, who became entitled to the dam-
ages by this purchase of the lands.   Thus, it will be
seen that this case, as well as the later New York
cases, repudiates the proposition that the inchoate
dower is not a valuable interest in the land, but holds
that, in the condemnation proceeding during coverture,
the interest of the wife will be protected by valuing her
interest and awarding it to her.

When we once concede that the inchoate dower is a
valuable interest in the land and consider that the com-
mon law idea that "the public shall be preferred to the
private" is opposed to the genius of our institutions
and the spirit of our constitution which declares that
"private property shall not be taken or damaged for
public use without just compensation," it is very hard
to discover a reasonable basis for the rule that even
condemnation proceedings, in the exercise of eminent
domain, can divest this right without notice or com-
pensation.   I concurred in the *Venable case* upon the
authority of the New York case and the text writers;

but a more careful examination of the reasons upon which the doctrine rests inclines me to hold, with the author in Lewis on Eminent Domain, that, notwithstanding these opinions, inchoate right of dower is such an interest in the land as is protected by the constitution and statutes against extinguishment, without compensation. But, however that may be, I feel assured that nothing short of condemnation can have such a harsh result. Much of the learning on the subject is based upon those condemnations for a purely public purpose and proceed upon the theory that the land only is estimated and its owners not considered further than they may have a hearing in dividing the damages or compensation awarded; but it seems to me, that, under our statute, each person having an interest is entitled to have his interest valued, and if remaindermen are not made parties, their interests shall not be bound by the proceeding. Section 2734, Revised Statutes, 1889. The whole scope of section 2734 indicates that the legislature did not intend that any owner's interest should be affected until he had his day in court. *Lister v. Lobley*, 7 Adol. and Ellis, 124.

It can not be said that remote grantees, as in this case, represent the widow. There is no privity between them. Had they not conveyed this land to the railroad, it would not, for one moment, be denied that she could have demanded and recovered her dower of them. They would then have occupied a position adversary to her; are they not still in that relation, seeing that by their warranty they are bound to hold this railroad harmless on account of their warranty against incumbrances?

If we deny her dower, are we not in effect taking her private property to satisfy their private liability on their covenants of warranty? Surely it can not be that the mere fact that the railroad company has, under

certain circumstances, the right to exercise eminent domain and has entered into possession, will deprive the widow of her dower now consummate by her husband's death. How does it differ in principle from any other estate that is not obtained by the company by purchase? In *Bradley v. Railroad*, 91 Mo. 493, the wife owned the land as her legal estate in fee. Her husband conveyed it to a third party, who conveyed it to one Combs, who conveyed it to the railroad company. This court held that the husband, as tenant by the curtesy, could convey his life estate and during his life she could not maintain her action for possession; that no cause of action accrued till her husband's death; that she was not barred by limitation nor estopped by his deed and that ejectment was her proper remedy.

In that case, as in this, the wife's interest was not condemned. The company contented itself with a purchase from those who had purchased from the husband. But in neither case had any compensation been paid for the wife's interest. While a condemnation pending coverture may, under the authorities, however unsatisfactory they are in reason, divest the wife's dower, on the theory that the husband has received compensation for the whole fee, yet I submit that where the husband's title was not condemned and where he did not sell or convey to the public or a public corporation, there can be no foundation for the presumption that, by his deed to a private person, he was receiving compensation for her dower or that his grantee supposed he was obtaining the land discharged from the dower when the statute of the state declared that: "No act, deed or conveyance, executed or performed by the husband without the assent of the wife, evidenced by her acknowledgment thereof, in the manner required by law to pass the estate of married women, and no judgment or decree confessed by or

recovered against him, and no laches, default, covin or crime of the husband, shall prejudice the right and interest of the wife," to dower in the "lands whereof her husband or any other person to his use, was seized of an estate inheritance at any time during the marriage." Sections 4525 and 4513, R. S. 1889.

In both, the *Chouteau case* and this case, the companies bought of one who had purchased from the husbands and took the lands subject to the dower of the wives. If the contention be good that, merely because the companies are *quasi* public corporations, they are released from this dower, then they obtain in each the widow's dower without paying a cent, either to the husband or his widow therefor.

For in neither case did the husband pretend to convey the wife's dower. In neither case did the husband, in his lifetime, dedicate the land to a public purpose by deed, plat, or *act in pais*. As to the lands conveyed in each case by warranty deeds by the remote grantees of the husbands, I think it is clear the widows are entitled to dower.

If the condemnation proceedings had been brought against Baker during coverture, most of the authorities hold her dower would be merged in the fee and pass by the condemnation, subject to her right to have it protected in equity; but, as no such suit was brought against her husband or herself, I am unwilling to hold that the dower was affected by a suit against grantees of her husband who held subject to her dower and adverse to her.

But it is argued that it is competent for the legislature to destroy or deny the right of dower entirely; that dower is a creature of the law and does not arise out of contract. A different view of this question was taken by this court in *Williams v. Courtney*, 77 Mo. 587, when it was said that such legislation "would

violate that constitutional provision which forbids that anyone be deprived of property 'without due process of law,' and would be a legislative attempt to take the property of one person and bestow it upon another." But, granting that it is within the power of the legislature to abolish dower altogether, which I think is a better view, still, I think it will be conceded that, until it does do so, it is a highly favored right, both at common law and under our statutes. In *Williams v. Courtney, supra,* SHERWOOD, J., said, "the right of a married woman to dower in the land of her husband rests on as secure a foundation as does the fee of the husband in such land."

The scrupulous care with which this right has been guarded by every legislature of the state, extending it even to estates less than freehold and providing for its alienation before assignment, and by this court from its foundation, furnishes no ground for the presumption that the legislature intended to preserve the right inviolate as against all purchasers, except railroad companies, and that, when they purchased, they should take the land discharged of dower.

A statute of condemnation which intended such a result ought to use no uncertain language. For my own part, I find no ground for such a construction in any statute of this state. On the contrary, it has been uniformly ruled by this court that after dower has once attached, it is not in the power of the husband alone to to defeat it by any act in the nature of alienation or charge.

"It is a right in law, fixed from the moment the facts of marriage and seizin concur, and becomes a title paramount to that of any person claiming under the husband by subsequent act." *Grady v. McCorkle,* 57 Mo. 172.

For the foregoing reasons, I dissent from the conclusions reached by a majority of the court in each of said cases.